[Civ. No. 10841. Third Dist. Dec. 18, 1964.]

GEORGE P. STUCKEY, Plaintiff, Cross-defendant and Respondent, v. RUTH I. STUCKEY, Defendant, Cross-complainant and Appellant.

Hewitt, McBride & Kenward and James R. McBride for Defendant, Cross-defendant and Appellant.

Steel & Arostegui, Padric L. Nelson and Terence J. Keeley for Plaintiff, Cross-complainant and Respondent.

PIERCE, P. J.—Ruth I. Stuckey, granted a divorce, has appealed from that portion of the decree limiting the present award of alimony to $200 a month.

The parties were married November 25, 1932, and separated in May 1962. The divorce action was tried in April 1963. The interlocutory decree was filed July 17, 1963. Thus at the time of the divorce the parties had been married 30 years, 7 months and 22 days. At the time of the divorce the wife was 54 years old. There are no children.

The cause of the divorce: the husband had become enamored with his bookkeeper. He told his wife (with a mutual friend as witness) that she had "picked a lemon" for a husband, that he no longer loved her and was moving out but that he would continue to support her and she would not "be deprived of anything." Acting upon this declaration, he moved out of the home and commenced depositing $367 a month in the wife's bank account for her support. This continued for several months.

The husband told the distraught wife she should see a Sacramento psychiatrist whom he recommended. Accepting this advice, she visited the psychiatrist and, returning, informed her husband the doctor "asked me if I had an alternative plan and I said well, I had no relatives or family with whom I could stay and no independent income so the only plan that I have is that I do have a teaching credential . . . and I was going to try to get a job . . . ." After a month she did get a job as a teacher.

Thereafter the couple had another conversation at the home of the friend. (Later at the trial the friend was the wife's corroborating witness.) During the conversation the husband told the wife he would continue to support her but that now that she had the extra money from teaching she would have "security." Acting upon his promise, the husband continued to deposit $367 to the wife's account—for three months, July, August, and September.

According to the wife's testimony, the husband had offered to enter into a written agreement with her covering her support and she had replied: "I said well there is [sic] never been any necessity for any such thing and we have always trusted each other and I have never had to ask you for money and I said forget the writing . . . ."

The husband then filed a complaint for a divorce. He apparently had changed his mind regarding his willingness to continue to support Mrs. Stuckey with retention by her of her teacher's earnings as "security" because when the wife answered this complaint and cross-complained for a divorce, she also noticed a motion for alimony. (The disposition of this motion does not appear in the record.)

At the trial it was shown that the husband, who is the manager of the Yuba City Refrigeration Company, received a salary of $12,600 a year; that this salary had increased regularly since his original employment by the company in 1946. The husband also participates in a profit-sharing plan of his employer. He travels sometimes for his firm and is allowed his living expenses when traveling and 15 cents per mile for his automobile. He is covered by social security.

The wife's "take home" pay as a teacher is $359.60 per month. She possesses a "general secondary" credential. She will not qualify for a "life diploma" until she has been teaching a total of five years (1965) and will be available for a pension only after she has taught a total of 10 years (1970). She is not presently covered by social security.

After the trial, in a memorandum opinion, the trial court observed: "The . . . husband did not present sufficient evidence in court to legally corroborate his case [sic] of action for divorce. . . ."[1] It found that the wife had and awarded her a divorce on the grounds of cruelty. During the course of the trial the parties had agreed to an equal distribution of the property, some of which was held in joint tenancy. In making this distribution the court awarded to the wife the home and its furniture, a Buick automobile, a life insurance policy and an endowment policy, $1,100 in cash, and one-half of the securities (mostly mutual fund investments). Evidence regarding the value of the property is unsatisfactory. From the scant proof we do have (aided by current market quotations on the securities) it would appear that the value of the property distributed to the wife may approximate a sum between $39,000 and $42,000.

█ This is an important factor in decision. Although the appeal is not upon the ground of an inadequate distribution of the property, the wife's financial position is vital in

---

[1] This is understatement. The husband's own testimony asserting his grounds for divorce were picayunish. Attempted corroboration through his sister was even more trivial. We are compelled to view this as a divorce action in which the wife's only demonstrated fault was to become middle-aged.

determining whether the alimony award of $200 a month is adequate.

 The only specification of the Civil Code for an award of alimony is that it shall be a "suitable allowance" "having regard for the circumstances of the respective parties. . . ." (Civ. Code, § 139.) This is frequently expressed as the weighing of the "wife's needs" against the "husband's ability to pay" (3 Witkin, Summary of Cal. Law (1960) pp. 2659-2660). In *Hall* v. *Hall* (1954) 42 Cal.2d 435 [267 P.2d 249], our Supreme Court (per Edmonds, J.) said (on page 442) : " 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn*, 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker*, 64 Cal.App.2d 239, 242 [148 P.2d 381].) " In *Arnold* v. *Arnold* (1946) 76 Cal.App.2d 877 [174 P.2d 674], Justice Wilson, speaking for the court, said (on pp. 885-886) : "The theory of this [alimony] requirement is that the husband entered upon an obligation which bound him to support his wife during the period of their joint lives, that by his own wrong he has forced her to sever the relation which enabled her to compel the performance of this duty, and that he is required to make compensation for the offense committed by him which has deprived her of the benefit of the obligation. [Citations.] A woman past middle age can seldom rehabilitate herself after a break in marriage relations and the courts may properly safeguard her financial future where the marriage is dissolved for the offense of the husband. [Citation.] "

Regarding the safeguarding of the wife's financial future, there is an aspect of the alimony problem frequently overlooked and that is the mortality of man. Alimony stops with the death of the husband. It is an actuarial truism that most women outlive their husbands. When divorce precedes the latter event, this can have consequences unfortunate for the grass-become-sod widow—particularly if the husband's death has been untimely. Generous alimony unbuttressed by any share in the husband's estate or adequate insurance on his life becomes a will-o-the-wisp. (See the facts stated in *Estate of Fritschi*, 60 Cal.2d 367 [33 Cal.Rptr. 264, 384 P.2d 656], and *Fritschi* v. *Teed*, 213 Cal.App.2d 718 [29 Cal.Rptr. 114].)

When, therefore, George Stuckey promised his wife that he would continue to support her and that her earnings as a teacher should be hers to afford her some support for her future, it would seem that the promise might have been considered as not far beyond the wife's reasonable right of expectation under the circumstances. As stated above, the husband's largess was short-lived. The court's award of $200 per month might also be said to seem somewhat short of generosity.

On the other hand, the scope of review by an appellate court of a trial court's award of alimony is circumscribed. A wide discretion is vested in the trial court (*Hall* v. *Hall, supra,* 42 Cal.2d 435, 442). In the very recent case of *Nunes* v. *Nunes,* 62 Cal.2d 33 (Nov. 1964) our Supreme Court says, at page 38 [41 Cal.Rptr. 5, 396 P.2d 37]: "Even where an innocent spouse is involved, the granting or refusing of alimony in an action for divorce lies largely in the discretion of the trial court [Citations]. Although other triers of fact might have become more generously disposed toward plaintiff, under the circumstances of the present case we cannot find that there has been an abuse of discretion."

Although we deem the question an exceedingly close one in the case at bench we similarly have reached the conclusion that the trial court's alimony award can not *presently* be disturbed.

Here the wife has present earning power, is apparently in good health, and earns $359.60 per month as a teacher. Her total monthly income with the $200 award of alimony will thus be $559.60 plus the dividends from her securities and interest on her savings account (the total of which is unstated in the record but which is perhaps $700-$800 a year). She has a well-furnished home to live in (and if it is not clear of mortgage we have not been so advised). She has two insurance policies (the extent of the benefits of which are also undisclosed). The record is silent as to any current extraordinary financial needs (so that we must assume they are the normal ones of a woman of her age and calling).

Equally meager is available information regarding the husband's ability to support the wife. His salary (gross or take home?) at the time of the divorce was $1,080 per month plus an undisclosed annual bonus. His commitments for living expenses were not brought before the court. There are no children to dilute the husband's obligation of family support.

Without the assets now possessed by the wife under the court's community property distribution, we would be com-

pelled to hold the $200 per month alimony award to be inadequate and an abuse of discretion—even with the additional teacher's salary. But with this property and the insurance she has a measure of security. In stating that we find no abuse of discretion under the circumstances, we have italicized *"presently."* We have in mind the reserved jurisdiction in the trial court to readjust a "permanent" alimony award. (Civ. Code, § 139; *Dean* v. *Dean* (1963) 59 Cal.2d 655 [31 Cal.Rptr. 64, 381 P.2d 944]; *Hough* v. *Hough* (1945) 26 Cal.2d 605 [160 P.2d 15]; *Kroupa* v. *Kroupa* (1949) 91 Cal. App.2d 647 [205 P.2d 683].) Should the wife here be unable to continue teaching or, regardless of this, should the husband enjoy an increase in salary substantially above that being received at the time of the divorce, his obligation to better the financial future and security in old age of his wife of 30 years should be deemed a *primary* one to which the trial court should give careful consideration upon the wife's application for alimony increase.

The judgment appealed from is affirmed. It would be inequitable to require that the wife's meager estate be depleted further. In the interests of justice it is ordered that the costs of appeal shall be borne by the husband; also that the trial court shall fix and order payment by the husband of a reasonable fee to the wife's attorney for his services on appeal.

Friedman, J., and Van Dyke, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1965.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.