[Civ. No. 13610. Third Dist. Mar. 26, 1974.]

In re the Marriage of EDITH M. and LEE A. LOPEZ, SR.
LEE A. LOPEZ, SR., Respondent, v.
EDITH M. LOPEZ, Appellant.

**COUNSEL**

John N. Bach for Appellant.

Jack Halpin and Richard J. Asbill for Respondent.

**OPINION**

**CARTER, J.**\*—This is an appeal by the wife from an interlocutory judgment of dissolution of marriage. On appeal, wife urges the following procedural and substantive contentions:

1. The interest of the husband in his law firm as of the date of trial was all community property.

2. The trial court erred in failing to determine the value of husband's interest in the accounts receivable, goodwill and work in progress of his partnership law practice.

3. Wife's motion for inspection, audit and review of husband's partnership legal files should have been granted.

4. The trial court erred in granting husband's motion to defer the issue of wife's request for attorney's fees and costs until after the court's determination of the principal issues.

5. The trial court abused its discretion in its allowance of attorney's fees and costs to wife.

6. The trial court abused its discretion in determining the amount and duration of spousal support.

We conclude the trial court did err on several grounds and will accordingly reverse and award wife costs.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

## FACTS

Husband is an attorney, having received his law degree in 1952, passed the Bar Examination in October 1952 and was admitted to practice in California in January 1953. In June 1953 he received a master's degree in law from New York University and two months later commenced the practice of law in Redding, California, as an associate in a law office of an established lawyer, at a salary of $300 per month. On January 1, 1955, without a capital contribution, husband became a 25 percent partner with the lawyer engaging in general practice. On August 8, 1957, while thus engaged in the practice of law, husband and wife were married.

On September 25, 1957, the law partnership was dissolved, and on October 1, 1957, husband opened his own law office as a sole practitioner. He brought into his practice some accounts receivable and cases in progress from the former partnership. In addition he invested the sum of $5,000 in his law office, and purchased some furniture, office equipment and law books. At the time of his marriage, husband owned free of debt a 1956 Oldsmobile, a boat, motor and trailer—all assets which he depreciated in his law practice. Following his marriage and during the first three months as a sole practitioner, husband grossed a total of $6,478.98, with expenses of $5,895.97, for a net income of $583.01.

During the ensuing years husband's law practice and earnings flourished. In 1958 he grossed $40,476.91 and his net income before taxes was $22,-793.95; in 1959 his gross and net income before taxes were $54,282.69 and $30,414.61 respectively; in 1960, $61,830.82 and $31,178.25 and in 1961, $77,305.68 and $49,738.38. On January 1, 1962, husband formed a partnership with Willis Haines. Haines contributed no capital to the business, but received 25 percent of the profits. In 1962 the new partnership produced $99,106.85 in gross receipts and husband's share of the net income before taxes was $48,433.58; for the year 1963 the figures were $109,463.16 and husband's share was $49,826.11. The Lopez-Haines partnership was dissolved in April 1964. For the year 1964 the total gross receipts of the partnership plus husband's after-dissolution gross income amounted to the sum of $129,072.30 which provided the husband with a total 1964 net income before taxes of $58,806.07. From 1965 through 1969, husband practiced as sole owner of his law business with associates. His respective gross receipts and net income before taxes during those years were as follows: 1965—$167,872.72, $72,729.03; 1966—$177,259.67, $64,410.88; 1967 — $200,608.71, $67,909.67; 1968 — $261,831.58, $102,403.67; 1969—$243,478.61, $79,028.03.

On January 1, 1970, husband formed a law partnership with two of his associates, Donald R. Kennedy and Robert L. Srite, at which time Srite paid the sum of $53,500 cash for a 25 percent interest in husband's law practice. This cash was deposited in Accounts Nos. 12 and 4239 (4324), Bank of Redding, in husband's name. At the same time, Kennedy paid husband $13,500 in cash and executed an unsecured promissory note in the sum of $40,000 for the purchase of 25 percent of husband's law business. Documents entitled "Agreement for the Sale of an Interest in Fixtures, Equipment, Library and Goodwill of a Law Practice," dated January 1, 1970, were executed by husband and his new partners. Each agreement provided that husband sell an undivided 25 percent interest in and to the fixtures, equipment and law library to each partner for the sum of $1,224.32, respectively. A 25 percent interest in the law practice goodwill which husband sold to each of his new partners was valued at $52,275.68 in both agreements.

Concurrently, husband and his partners executed a partnership agreement which specified that the beginning capital of the partnership was $214,000 of which $209,895.72 was designated as goodwill. This agreement provided for a schedule of payments to be made to a partner withdrawing voluntarily, with no payment on return of capital investment if voluntary withdrawal occurred the first year (1970). Repayment of capital was provided in varying increments upon voluntary withdrawal by a partner during the ensuing five years.

The Lopez-Kennedy-Srite partnership produced gross receipts of $266,916.66 in 1970 and husband's net income before taxes was $81,508 for that year. For 1971 through the month of September, the partnership gross was $204,775.29 and husband's net income before taxes was $61,145.41.

During the trial, husband testified: "Every year at the end of the year or during the year I withdrew every penny of my income from the practice and used it for the benefit of the community. If there was at the end of the year say ten or fifteen thousand dollars in the office account, I would take that out and put it into a savings account or something such as that, or acquire—make an investment with it for the community." Husband confirmed that there were no cash reserves in his law practice because of this conduct, and that the assets of his law practice consisted only of a library, office equipment and accounts receivable.

Wife left high school at the age of 16, did some office work prior to the marriage, but had no special job training. Before her marriage to husband, wife worked as a cocktail waitress in Redding. Her total wages for the tax year 1957 were $1,320 plus $168 in gratuities. At the time of the

marriage of the parties, wife was 25 years of age. She had a minor daughter, born of a former marriage, which child was adopted by husband shortly after his marriage to wife. A son, born to the parties in December 1958, was at the time of the trial living with wife and his half-sister.

Since the marriage, wife has not been gainfully employed. She testified that she suffered various health problems, including a quiescent ulcer and degenerative changes to her cervical spine and thoracic spine, which could perhaps limit the kind of activities she might pursue.

During their marriage, husband and wife enjoyed a substantial and comfortable life style, which included expensive cars, home and vacations. Wife spent considerable money on clothes, accessories, fur coats and jewels. At the outset of their marriage the parties established a household budget of $750 per month, which was later changed to $475 cash deposited monthly in wife's personal checking account for her personal use for family food, a housekeeper and ironing lady. In addition, wife charged any items she felt necessary for herself, the children and husband. These charges, the house payments, taxes and insurance were paid by husband from another account. On this basis at the time of the separation of the parties, wife incurred expenses of about $1,000 per month.

During the course of the trial the parties stipulated to the market value of the community interest in various parcels of real property. The trial court among other things found the nature and net values of the community property of the parties to be as follows:

"*Real Property:*

| | |
|---|---:|
| 1628 Orange Street residence | $ (32.26) |
| 4223 Alta Mesa residence | 37,233.43 |
| 1616 West Street Law Office Building | 67,627.39 |
| Hilltop property (1/3 interest) | 21,666.66 |
| Duck Club (1/6 interest) | 7,750.00 |
| Lakewood Manor lots | 5,353.00 |
| Total | $139,598.22 |

"*Bank Deposits:*

| | |
|---|---:|
| Bank of Redding, Account # 1 | $ 6,131.23 |
| Bank of Redding, Account # 6419 | 11,260.97 |
| Bank of Redding, Account # 4222 | 559.86 |
| Bank of Redding Law Bldg. rental account | 1,908.82 |
| Wells Fargo Commercial (household) | 500.00 |
| United California Bank ([wife's] Personal) | 413.94 |
| Total | $ 20,774.82 |

"*Notes:*
| | |
|---|---:|
| Anne Byer (1/3 interest) | $ 856.74 |
| Fred Held | 1,078.66 |
| Westchester Bldg. | 47,337.50 |
| Total | $ 49,272.90 |

"*Life Insurance (Cash Values):*
| | |
|---|---:|
| Prudential # 32620853 | $ 5,312.50 |
| Prudential # 33070902 | 3,170.00 |
| Equitable # 60370022 | 2,055.06 |
| NSLI | 906.05 |
| Keogh Plan | 2,046.60 |
| Total | $ 13,490.20 |

"*Shares of Stock:*
| | |
|---|---:|
| Bank of Redding (or Bank of California) | $ 43,663.22 |
| P.G.&E. (9 shares) | 280.13 |
| National Life of Florida (100 shares) | 287.50 |
| Total | $ 44,230.85 |

"*Personal Property:*
| | |
|---|---:|
| Alta Mesa Furnishings | $ 10,000.00 |
| Orange Street Furnishings | 4,566.40 |
| 1971 Lincoln | 10,133.05 |
| 1971 Toronado | 6,450.00 |
| 1970 Honda motorcycle | 600.00 |
| Houseboat (1/2 interest) | 2,000.00 |
| Golf Club membership | 800.00 |
| Boat and motors (1/2 interest) | 150.00 |
| Total | $ 34,699.45 |
| "TOTAL COMMUNITY PROPERTY VALUE | $302,699.45" |

The court awarded to the wife as her one-half share of the community property the following:

| | |
|---|---:|
| "Alta Mesa residence | $ 37,233.43 |
| Alta Mesa furniture and fixtures | 10,000.00 |
| 1971 Lincoln Mark III automobile | 10,133.05 |
| One-half of Bank of Redding stock | 21,831.11 |
| Westchester Bldg. note (secured) | 47,337.50 |

| | |
|---|---:|
| Bank of Redding Account # 6419 | $ 11,260.97 |
| Fred Held promissory note (secured) | 1,078.66 |
| Wells Fargo Household account | 500.00 |
| Bank of Redding Account # 522 (1/3 interest) | 559.86 |
| Funds on deposit in Bank of Redding Account # 1 (the account to remain in [wife's] name) | 6,131.23 |
| Cash to be paid by [husband] to [wife] | 4,967.41 |
| Total | $151,033.22" |

The trial court ordered *all* items of real and personal community property not specifically awarded to the wife to be retained by the husband as his one-half of the community property; the total net worth of this one-half the court found to be in the sum of $151,033.22. In addition, the court ordered the husband and wife to assume the balance due and owing on any property awarded to each and to hold the other party harmless from any liability thereon.

Custody of the minor son was awarded to husband; that award is not challenged. Wife was awarded the sum of $200 per month spousal support to terminate after 24 months. Husband was awarded as his separate property the bank accounts which contained the balance of the cash payments made by Kennedy and Srite, the unpaid balance of the Kennedy note, and a 50 percent interest in the law partnership of Lopez, Kennedy and Srite.

1. *Husband's interest in his law partnership and the proceeds from the sale of a one-half interest therein were erroneously found to be all separate property.*

For reasons hereafter set forth, we hold that the trial court erred in determining that the 50 percent interest of the husband in his law practice and the proceeds paid him by his two law partners were separate property (findings 20 and 21). Husband asserts in his brief as follows: "It is clear from the uncontradicted evidence, that the law practice of the respondent at the time he opened his office on October 1, 1957, was a continuance of his already existing practice, and it was the sole and separate property of the respondent, and remained the same throughout the marriage." Husband further argues that any community interest in his law practice was withdrawn each year and that he applied the income earned therefrom to community investments. The trial court accepted this approach. However, such position ignores the law as stated in two earlier decisions of this court.

In *Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876 [19 Cal.Rptr. 106], we had occasion to comment on the proper classification of a law

practice commenced one year before a marriage which lasted 21 years. During his practice husband built up a substantial earning capacity. The divorce decree was silent as to ownership of the law practice; on appeal, wife contended that she was improperly denied alimony. This court therein stated at page 882: "The law business was a substantial part of the community, but was given no valuation by the judge who, in declaring the parties to have been 'marital partners' evidently did not feel that the partnership relationship covered the law business. Where, as here, respondent had commenced the practice of law just one year before his marriage and had built up a lucrative law business by his industry and professional ability, a practice producing $24,000 a year net, the business is community property and it has a substantial value. [Citation.] In considering this value, consideration must be given to the fact that, on divorce and dissolution of the community, a professional practice goes automatically to the spouse licensed to practice it. He is not selling out or liquidating, but continuing in business. Effectually, it is the case of a silent partner withdrawing from a going business. And, if such partner is to receive fair compensation for her share, on her enforced retirement, it should be so evaluated."

In *Todd* v. *Todd* (1969) 272 Cal.App.2d 786, 791 [78 Cal.Rptr. 131], we again held that "While the right to practice law is a property right which cannot be classed as community property, the value of the practice at the time of dissolution of the community is community property."

It is generally settled that the efforts, time and skills of the husband are community assets. (*Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 332-333 [58 Cal.Rptr. 304].) Assuming that husband commenced his law practice with certain monies earned by him prior to his marriage which were his separate property, the primary value of his practice was derived from his own individual efforts after marriage, rather than from the negligible sum of money initially invested in his law business. The approach urged by husband on appeal gives the worth of his separate property used in his law practice an exaggerated importance. In the instant case, the value of the law practice was clearly one and the same as the husband's energy, skill, judgment, intelligence and personality as a practicing attorney. Even though, as argued at trial, the retirement and death of other attorneys in the Redding area may have contributed to the growth of husband's practice, these factors cannot be deemed the "other favorable business factors" which were determinative in *Somps*. In addition, the trial court found in *Somps* that husband's equity in the engineering partnership was a *reasonable return* on his separate property, and the various interests in real property were bought and paid for by the business partners as partnership investments, with partnership credit and not from community funds.

In *Beam* v. *Bank of America* (1971) 6 Cal.3d 12 [98 Cal.Rptr. 137, 490 P.2d 257], our Supreme Court recently discussed the two approaches used by California courts in apportioning earnings between separate and community income. The court stated (at p. 18): "One method of apportionment, first applied in *Pereira* v. *Pereira* (1909) 156 Cal. 1, 7 [103 P. 488], and commonly referred to as the *Pereira* approach, 'is to allocate a fair return on the [husband's separate property] investment [as separate income] and to allocate any excess to the community property as arising from the husband's efforts.' (*Estate of Neilson* (1962) 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745].) The alternative apportionment approach, which traces its derivation to *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17, 27-28 [199 P. 885], is 'to determine the reasonable value of the husband's services . . . , allocate that amount as community property, and treat the balance as separate property attributable to the normal earnings of the [separate estate].' (*Tassi* v. *Tassi* (1958) 160 Cal.App.2d 680, 690 [325 P.2d 872].)" (Fns. omitted.)

Factual comparison of *Pereira, Van Camp* and *Beam* with the case at bench demonstrates striking differences. In each of the cited cases, the husband's separate property occupied a key role in the husband's business. In *Van Camp* and *Beam* the husband's efforts had a minor influence on the growth of the investment. In *Pereira,* the case perhaps most analogous to the matter before us, husband's efforts were deemed important but additionally the presence of his separate property capital was considered a requisite. ■ As stated in *Beam* (at p. 18): " 'In making such apportionment between separate and community property our courts have developed no precise criterion or fixed standard, but have endeavored to adopt that yardstick which is most appropriate and equitable in a particular situation . . . depending on whether the character of the capital investment in the separate property *or* the personal activity, ability, and capacity of the spouse *is the chief contributing factor in the realization of income and profits* [citations] . . . [Par.] In applying this principle of apportionment the court is not bound either to adopt a predetermined percentage as a fair return on business capital which is separate property [the *Pereira* approach] nor need it limit the community interest only to [a] salary fixed as the reward for a spouse's service [the *Van Camp* method] but may select [whichever] formula will achieve substantial justice between the parties. [Citations.]' (*Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 599-600 [250 P.2d 730] . . . .)" (Italics added.)

Many past and present distinguished California lawyers of initial humble and impecunious beginnings will attest to the fact that it is not ordinarily capital investment by a sole legal practitioner which is the chief contributing

factor in the realization of income and profits. ▆▆ On retrial it will be for the trial court to determine which of the recognized approaches will most effectively achieve substantial justice between the parties. We make this observation with the reservation, however, that the trial court might well conclude that husband's initial investment in his law practice became so commingled with the community that all traces and vestiges of it as separate property have been lost. (See *Mueller* v. *Mueller* (1956) 144 Cal.App.2d 245, 250 [301 P.2d 90].)

2. *Existence and valuation of goodwill and assets of husband in his law practice.*

Several serious questions have been raised as to the valuation of husband's interest in his law partnership. ▆▆ Pursuant to section 4800 of the Civil Code (1970 Family Law Act), a trial court is now required to "divide the community property and the quasi-community property of the parties . . . equally." In order to do this, the trial court *must make specific findings of fact* as to the nature and value of the specific property of the parties. (*May* v. *May* (1969) 275 Cal.App.2d 264 [79 Cal.Rptr. 622]; *Hong* v. *Hong* (1965) 237 Cal.App.2d 239, 241 [46 Cal.Rptr. 710]; *Cardew* v. *Cardew* (1961) 192 Cal.App.2d 502 [13 Cal.Rptr. 620]; Cal. Rules of Court, tit. IV, div. I, ch. 2, rule 1242.)

It has been urged that there can be no "goodwill" in husband's professional law business upon dissolution. Neither *Lyon* v. *Lyon* (1966) 246 Cal.App.2d 519, 524 [54 Cal.Rptr. 829], nor *Heywood* v. *Sooy* (1941) 45 Cal.App.2d 423 [114 P.2d 361], are applicable to the case at bench, since both cases involved dissolutions of law partnerships between practicing attorneys. The case before us deals solely with a marital dissolution and not a law partnership dissolution. The court in *Golden* v. *Golden* (1969) 270 Cal.App.2d 401, 405 [75 Cal.Rptr. 735], noted the crucial distinction: "Where, as in *Lyon,* the firm is being dissolved, it is understandable that a court cannot determine what, if any, of the good will of the firm will go to either partner. But, in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business."

▆▆ Consistent with this principle of community property law, if "goodwill" in a professional practice as a going business is found to exist

as an asset at the time of a marital dissolution, such asset is subject to the innumerable consequences of the Family Law Act of 1970. In such cases, professional goodwill may thus be separate property, community property, or varying degrees of both depending upon the particular circumstances. The fact that "professional goodwill" may be elusive, intangible, difficult to evaluate and will ordinarily require special disposition, is not reason to ignore its existence in a proper case.

It has been aptly stated: "Accountants, writers on accounting, economists, engineers, and courts, have all tried their hands at defining goodwill, at discussing its nature, and at proposing means of valuing it. The most striking characteristic of this immense amount of writing is the number and variety of disagreements reached." (Canning, The Economics of Accountancy (1929) p. 28.)

■ Mindful of the nebulous area into which we venture, we believe that for purposes of a marital dissolution, the parties are primarily concerned with the existence, value and consequences of the "goodwill" of a professional business in an *economic sense,* as distinguished from legal or accounting concepts. As stated by Professor Norton M. Bedford, University of Illinois: "It seems to be well established in the literature of economics that the economic value of any asset depends upon the future net receipts which the asset will produce. While these receipts to a consumer are receipts of satisfactions, to a business firm the receipts are cash or cash equivalent (more broadly, purchasing power equivalent). *Since the future is unknown, different individuals and business entities will have different expectations as to what these future receipts will be. Thus, there is no certainty in any one valuation of an asset. To the contrary, a considerable amount of uncertainty attaches to any valuation. But subject to this variability, the conceptual view of the economic value of any asset is based on the future receipts which the asset will produce.* Because individual assets are not used in isolation but as a part of an organized entity containing a variety of distinct assets, the economic concept of goodwill is introduced when the future receipts of the organization cannot be assigned as a contribution of a finite list of specific assets. That is, the search to assign a specific cause, in the form of a specific asset, for the expected future receipts requires the introduction of goodwill as an asset." (Bedford, *Goodwill,* in Handbook of Modern Accounting (Davidson ed. 1970) ch. 19, p. 19-5.) (Italics added.)

We think it follows that *in marital cases the expectancy of future earn-*

*ings is not synonymous with, nor should it be the basis for, determining the value of "goodwill" of a professional practice, but is simply a factor to consider in deciding if such an asset exists.* A community property interest can only be acquired during the marriage, and it would be inconsistent with that philosophy to assign value to the postmarital efforts of either spouse. *(In re Marriage of Fortier* (1973) 34 Cal.App.3d 384, 387-388 [109 Cal.Rptr. 915].)

■ We emphasize that no rigid or unvarying rule has been enunciated by our courts for determining the existence or value of the "goodwill" of a law practice or any other profession as a going business, and therefore each case must be determined upon its own facts. Whatever the result in a given case, we hold that where the issue is raised in a marital dissolution action, the trial court must make a specific finding as to the existence and value of the "goodwill" of a professional business as a going concern whether related to that of a sole practitioner, a professional partnership or a professional corporation. *(Golden* v. *Golden, supra,* 270 Cal.App.2d 401 (sole medical practitioner); *Todd* v. *Todd, supra,* 272 Cal.App.2d 786 (sole legal practitioner); *Brawman* v. *Brawman, supra,* 199 Cal.App. 2d 876 (sole legal practitioner).)

In so holding, we do not imply that every professional business as a going concern necessarily has a valuable goodwill, or that if found to exist the value thereof may be precisely fixed in terms of so many dollars. Instead, there are certain factors, assuredly not all inclusive, which may tend to provide the trial court with broad latitude in resolving these questions, with one objective being the determination of the fair economic value of all the community property for equal division purposes. (Civ. Code, § 4800.) In addition, if the trial court were to find in a proper case that the asset of professional goodwill is the separate property of the practitioner, where spousal or child support is an issue, a specific finding as to value is required, since it may directly affect the question of ability to meeet those obligations. *(In re Marriage of Cosgrove* (1972) 27 Cal. App.3d 424, 433-434 [103 Cal.Rptr. 733].)

■ Certain matters merit consideration which may be said reasonably to contribute to, diminish, or affect the intangible value of professional goodwill at the time of dissolution and the continuity and retention of the benefits thereof which the professional practitioner will continue to enjoy after the marital dissolution. In that context some such factors are the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his

business as a sole practitioner or as a member of a partnership or professional corporation to which his professional efforts have made a proprietary contribution. In addition, consideration should be given to the *value* of the "fixed" and "other assets" of the professional business with which the "goodwill" is to continue its relationship.

■ While "market value" and the value for marital dissolution purposes of "professional goodwill" may be synonymous, in our view such value should be determined with *considerable care and caution,* since it is a unique situation in which the continuing practitioner is *judicially forced to buy an intangible asset at a judicially determined value and compelled to pay a former spouse her share in tangible assets.* (Civ. Code, § 4800.) Asset values and liabilities should be determined as near to the date of trial as reasonably practicable (*Randolph* v. *Randolph* (1953) 118 Cal.App.2d 584 [258 P.2d 547]), with the reservation, however, that since the enactment of Civil Code section 5118, effective March 4, 1972, any portion of the law practice assets including goodwill which are attributable to the earnings and accumulations of a spouse living separate and apart are the separate property of the spouse earning or accumulating the same. This could be significant where the earnings of a professional person are substantial and the time lapse from separation to trial is considerable.

■ In determining the value of a law practice or interest therein, the trial court should determine the existence and value of the following: (a) fixed assets, which we deem to include cash, furniture, equipment, supplies and law library; (b) other assets, including properly aged accounts receivable, costs advanced with due regard for their collectability; work in progress partially completed but not billed as a receivable, and work completed but not billed; (c) goodwill of the practitioner in his law business as a going concern; and (d) liabilities of the practitioner related to his business.

In the case at bench, husband and his two law partners arrived at an agreed value of $209,895.72 for goodwill in husband's law business as of January 1, 1970, some 14 months prior to the husband's filing for a dissolution of the marriage. On remand, the trial court should give careful weight to that agreement, with the observation, however, that the agreement allocated the sum of $4,897.28 to the value of the furniture, equipment and law library. There is no mention in the agreement of the "other assets" of a law practice such as accounts receivable, costs advanced, work in progress not billed, or work completed and not billed. As properly urged by the wife, the value of these "other assets" should be determined, along with the question whether the partners contemplated the

inclusion of their value in the $209,895.72 goodwill item. Finally, in light of such findings, the trial court should determine the value of the "goodwill," if any, in husband's law partnership business.

We note that at the time of trial husband's capital account in his law partnership was in excess of $120,000. Whatever its determined amount and ultimate nature, this item, along with the $40,000 Kennedy note and the $67,000 paid to husband by his partners must be considered in the determination of the extent of the community property of the parties.

3. *Did the trial court err in denying wife's motion to inspect husband's confidential attorney-client files?*

Wife's counsel made a motion to require husband to produce and permit inspection and audit of his legal files by wife's counsel and her certified public accountant. The basis of the motion was the claimed necessity to value accurately the law practice in which the wife asserted a community interest.

After hearing the motion, the court held that the individual client files in husband's law office were confidential and not available for inspection. The court did hold, however, that contracts between clients and their attorney with reference to fees are not confidential; journals, cash receipts and cash receivables were relevant prior to the date of separation; and that the husband should make available to wife's attorney the fee arrangements with each individual client.

Upon dissolution of a marriage, while the nonlawyer spouse may be a silent community property partner withdrawing from a going business (*Todd, supra*), she is not entitled to invade the arena of confidence which exists between her lawyer husband and his clients. Nor is a court entitled under the guise or offer of judicial secrecy to compel a violation of such privilege. Matters which are privileged and confidential between an attorney and his clients are not subject to forceful invasion on the basis of marital economics or discovery convenience. We think the trial court properly disposed of the matter, with the following exception: Wife had the right to depose husband and his law partners concerning the *value* of all assets of the law practice, as heretofore noted, *up to the time of trial* in this case without invading privileged matter or information specifically declared to be confidential under Evidence Code section 952. An examination of the record and exhibits discloses there was full compliance with the court's discovery order and the order was broad enough to reach sufficient evidence to support findings as to the existence and value of the "fixed assets," "other assets," "goodwill" of the law practice and husband's income.

*4. Did the trial court err in deferring the issue of attorney fees and costs until after the decision on the principal issues?*

Prior to trial, wife's counsel moved for $5,000 on account of attorney's fees for services which had not yet been rendered, on the representation that such sum was his firm's minimum retainer. At the time of the hearing on the motion the trial court apprised both attorneys as follows: "I can't anticipate how much work is going to be necessary to resolve the issues here within the realm of any precision, and my attitude, perhaps, is wrong, but I believe it is within the law and practicality to [award] an adequate figure to permit counsel to proceed with whatever is necessary, and leave the ultimate [award] of attorney's fees and costs to the conclusion of the case. I feel that is the real fair way of doing it." ▮ At the conclusion of the hearing the court ordered husband to pay wife's counsel the sum of $2,000 on account of attorney's fees to be reasonably incurred, and the further sum of $1,000 for costs. Wife cites *Pope* v. *Pope* (1951) 107 Cal.App.2d 537 [237 P.2d 312], for the proposition that the trial court must give the wife sufficient attorney's fees and costs so that she has the means to hire counsel of adequate standing to equalize the contest and protect her rights.

Wife argues that deferral of the determination of an award for her attorney's fees and costs until after the trial court had resolved the other issues of the case was an abuse of judicial discretion which resulted in prejudicial error, urging that such ruling allowed the trial court to consider circumstances that, if offered at the time of the normal course of trial, would have been irrelevant, immaterial, privileged and/or inadmissible. Wife cites no authority for such a concept. The matter of wife's counsel fees and costs were proper issues before the trial court, and the continuation of such issues to the conclusion of the case was authorized by section 1048, subdivision (b), of the Code of Civil Procedure. (See also, 3 Witkin, Cal. Procedure (2d ed. 1971) § 266, p. 1936.) Not only was the wife able to retain counsel of her own choosing, but as evident from the trial record, an attorney of obvious competence. Finally, wife fails to point out what circumstances or matters were improperly considered by the trial court in the determination of fees and costs allowed. Her contention is without merit.

*5. Was the award of attorney's fees and costs inadequate?*

After trial of the main issues, wife's counsel moved for attorney's fees of $15,345.32, which figure included costs. The trial court concluded that the amount of time invested by wife's counsel was unreasonable and unnecessary. After summarizing its opinion of the way the case was con-

ducted, the trial court stated in its memorandum as follows: "The court is of the opinion that Mrs. Lopez could have been well and properly represented, by foresight—not hindsight, with a fee reasonably incurred in the sum of $5,000. The sum of $2,000 has been paid on account. Petitioner will pay counsel for Respondent the additional sum of $3,000. Petitioner will also pay the firm of Matson, Isum & Company [accountants] the sum of $1,500 for accounting services rendered on behalf of Respondent. The parties will otherwise each bear his or her own fees, expenses and costs of suit except as heretofore or herein ordered paid by Petitioner."

Wife contends that this award of attorney's fees and costs was inadequate. To sustain such a position, she carries a difficult burden.

As summarized in *Smith* v. *Smith* (1969) 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282]: "The question of the reasonableness of the order for attorney's fees is addressed to the sound discretion of the trial court [citations], and in the absence of a clear showing of abuse its determination will not be disturbed on appeal. [Citations.] ' "Abuse of discretion is never presumed. It must be affirmatively established. A reviewing court is not authorized to revise the lower court's judgment even if it should be of the opinion that it would have made a different award had the matter been submitted to its judgment in the first instance, in the absence of a clear abuse of discretion." ' [Citation.] 'The discretion was the trial judge's, not ours; and we can only interfere if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' [Citations.]"

It is well established that in determining a reasonable fee in dissolution cases the trial court is permitted to consider various factors: namely, the nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of the parties, the skill required, the professional standing and reputation of the husband's attorneys and the attorneys selected by the wife. (*Pope* v. *Pope* (1951) 102 Cal.App.2d 353 [227 P.2d 867]; *Palmquist* v. *Palmquist* (1963) 212 Cal.App.2d 322, 338 [27 Cal.Rptr. 744].)

The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case. Certainly a desirable objective of domestic litigation is prompt and equitable resolution of marital difficulties rather than their bitter prolongation. Conscientious and successful efforts by counsel to resolve as many areas of disagreement as possible without judicial intervention is entitled to serious consideration in awarding attorney's fees. Compensable professional legal skill is not limited to trial time or courtroom techniques alone.

Although this court might disagree with the opinion of the trial judge as to the reasonableness or necessity of the time invested by wife's counsel in the representation of her interests, still we cannot say as a matter of law that the order as to fees and costs allowed was unreasonable. The burden is on wife to establish an abuse of discretion, which has been characterized as follows: " 'In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered. . . .' " (*Crevolin* v. *Crevolin* (1963) 217 Cal.App.2d 565 at p. 572 [31 Cal.Rptr. 622].) No abuse of the trial court's discretion in the matter of counsel fees affirmatively appears of record.

In so holding, we are constrained to point out that our affirmance of the fees and costs awarded the wife is controlled by the application of an "abuse of discretion standard," and thus should not be taken by the trial court as tacit approval of adequacy, particularly with respect to any future request for counsel fees and costs on remand, considering the factors enumerated in *Pope* and *Palmquist, supra.*

### 6. *Was the award of spousal support inadequate in amount and duration?*

Wife was awarded the sum of $200 per month spousal support for a period of 24 months. ▮ For reasons hereinafter set forth, we hold that the determination by the trial court of the amount and duration of spousal support was an abuse of discretion. In so holding we are not unmindful of the fact that the scope of review by an appellate court of such a matter is circumscribed. A wide discretion is vested in the trial court (*Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249]), and thus an appellate court must act with cautious judicial restraint, even though the particular award might appear on appeal to be modest or generous under the particular circumstances. This court in *Brawman* v. *Brawman, supra,* 199 Cal.App.2d at pages 879-880 said: "The discretion of the trial court 'is not arbitrary . . . "it must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the husband. . . . In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,— all the circumstances before it being considered." ' "

▮ We believe that an abuse of discretion occurs when, after calm and careful reflection upon the entire matter, it can be fairly said that no judge would reasonably make the same order under the same circumstances. Such is the case at bench.

The basis for an order of spousal support to be paid to a party in a dissolution action is found in Civil Code section 4801, subdivision (a), which reads in part as follows: "In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable having regard for the circumstances of the respective parties, including the duration of the marriage, and the ability of the supported spouse to engage in gainful employment without interfering with the interests of the children of the parties in the custody of such spouse. . . ."

In the case of *In re Marriage of Cosgrove, supra,* 27 Cal.App.3d at page 434, the court in upholding a decision denying spousal support said: " '. . . In determining the need for, the amount of and the duration of spousal support under The Family Law Act, the court is to ignore marital fault and is to base its determination solely on the circumstances of the parties, including the duration of their marriage and the ability of the supported spouse to engage in gainful employment (Civ. Code, § 4801, subd. (a).) " 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' [Citation omitted.] '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as ability to earn and actual earnings.' [Citation omitted.]" . . . ' "

The elimination of "fault" as a factor to be considered by the trial court in the allowance or denial of spousal support under The Family Law Act (Stats. 1969, ch. 1608, p. 3314, effective Jan. 1, 1970; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 892 [101 Cal.Rptr. 295]; *In re Marriage of Cosgrove, supra,* at pages 433-434) did not eliminate the requirement of a fair and reasonable consideration of "nonfault" factors which have long been judicially established.

The composition of the family unit in the case at bench appears to be typical in that the husband was the working provider of income, and the wife, who was not gainfully employed outside of the home during the course of the marriage, was committed to care for the home and two minor children. At the time of trial, husband's daughter by step-parent adoption was 15 years of age and her custody was awarded to the wife. Husband was ordered to pay $250 per month for child support. The natural son of the parties was age 12, and his custody was awarded to husband.

While by no means all inclusive, the following are some of the

circumstances applicable to the case at bench which a trial court should consider in determining the allowance, amount and duration of spousal support:

1. A comparison of the financial position of each of the parties before and after the dissolution (*Huntington* v. *Huntington* (1953) 120 Cal.App. 2d 705 [262 P.2d 104]) with due consideration given as to property owned and obligations to be met (*Hall* v. *Hall, supra,* 42 Cal.2d 435).

2. The ability of the wife to work and her potential earnings considered in the context of her age, training, and likelihood of employment. (*Brawman* v. *Brawman, supra,* 199 Cal.App.2d 876; *Arnold* v. *Arnold* (1946) 76 Cal.App.2d 877 [174 P.2d 674]; *Newbauer* v. *Newbauer* (1949) 95 Cal.App.2d 36 [212 P.2d 240]; *Haldeman* v. *Haldeman* (1962) 202 Cal. App.2d 498 [21 Cal.Rptr. 75].)

3. The reasonable needs of the wife for sustenance, clothing, shelter and care due her in the station of life to which she is accustomed (*In re Marriage of Siegel* (1972) 26 Cal.App.3d 88 [102 Cal.Rptr. 613]), within the ability of the husband to provide (*Pope* v. *Pope, supra,* 102 Cal.App.2d 353; Civ. Code, § 4801, subd. (a)), and considering her age, mental and physical health.

4. The nature of the separate estate of the wife with its actual and reasonable income potential. (*Dallman* v. *Dallman* (1959) 170 Cal.App. 2d 729 [339 P.2d 636].)

5. Whether the wife has made adequate effort to find suitable work, consistent with her age, ability and health, and to conscientiously establish herself as genuinely endeavoring to be partially self-supporting, consistent with her maternal obligations. (*Webber* v. *Webber* (1948) 33 Cal.2d 153 [199 P.2d 934]; *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279, 284 [110 Cal.Rptr. 619]; *In re Marriage of Rosan, supra,* 24 Cal.App.3d 885.)

6. The nature and extent of the community property awarded to each of the parties, with its actual and reasonable potential for the production of net income after state and federal taxes. (*Stuckey* v. *Stuckey* (1964) 231 Cal.App.2d 382, 386 [41 Cal.Rptr. 792].)

7. Income tax consequences of spousal support to both the paying and receiving spouse.

8. The needs of the husband, including necessities and reasonable living expenses. (*Hall* v. *Hall, supra,* 42 Cal.2d 435; *Jones* v. *Jones* (1955) 135 Cal.App.2d 52 [286 P.2d 908].)

9. The ability of the spouse to pay, based on his financial condition, resources, ability to earn and actual earnings (*Hall* v. *Hall, supra,* 42 Cal.2d 435, 442), with due consideration given to income tax and social security deductions, life and health insurance premiums, and retirement contributions, if any.

10. Other valid support obligations of the paying spouse to his lawful dependents.

11. The duration of the marriage. (Civ. Code, § 4801, subd. (a).)

A brief summary of the findings of the trial court, in light of the foregoing, establishes the lack of adequate consideration of the essential circumstances to be evaluated in determining the duration and amount of spousal support for the wife. As of the date of trial, the court found the parties possessed $302,699.45 in community property, with husband's net earnings before taxes averaging approximately $7,000 *per month* during the seven years preceding the dissolution. In addition, the trial court found and awarded husband as his separate property over $120,000 representing his capital account in his law partnership, plus $27,229.20 cash and the balance of the Kennedy note in the sum of $34,670. It is undisputed that husband's earnings from the date of filing for dissolution to time of trial (some nine months) continued at an annual rate of approximately $80,000 per year before taxes. Both husband and wife testified to average living expenses of $1,000 per month, with husband obligated to pay insurance, property taxes, club dues and payments averaging about $2,058 per month. Although not specifically mentioned in the findings, we note that husband receives the further sum of $1,075 per month rental income from the law office building awarded to him which offsets part of his foregoing monthly payments.

The wife was awarded the family residence on which there was a balance of $12,766.57 owing in monthly payments of $160 per month, plus $673 in annual property taxes. Wife is without any separate estate and made no effort to seek employment after separation, but rather maintained the family residence for her and the two minor children. There was no supportive medical evidence to verify wife's physical condition, and she had not sought medical care for her spinal condition during the four years preceding the trial. The trial record supports the finding that wife had the ability to engage in gainful employment, although her education, training, skill and age would appear to limit her earning potential to some degree. Husband is obligated to pay $250 per month for the support of his daughter and to support his son. The duration of the marriage was 14 years and 3 months.

A cursory examination of the "community property" awarded wife indicates that 40 percent thereof (i.e., the equity in the family residence, furniture and Mark III Lincoln automobile at a total value of $57,366.48) are without income potential, unless converted to cash, or the family residence sold or rented. An additional 40 percent of the "community property" awarded wife is in the form of 817 shares of stock in the Bank of Redding and a secured note on the Westchester Building, the combined value of which produces a monthly taxable income of $322.92. The balance of the "community property" awarded the wife consisted of cash in the sum of $23,419.47 which if invested at 6 percent interest would produce an additional taxable income of $117.09 per month.

Husband seeks to justify the award of $200 per month spousal support for two years on the premise that the income to be earned from the "community property" awarded wife, plus the $250 per month child support awarded for the daughter will provide wife with a total of $890 per month to meet her needs. Such an assumption completely ignores several crucial factors: namely, husband's ability to pay; duration of the marriage; the tax consequences imposed upon the wife due to the "kind" of community assets awarded to her; and the substantial financial disparity of the parties after the dissolution due to the erroneous finding that husband's interest in his law practice and the proceeds from the sale of one-half thereof were his separate property.

Since oral argument, respective counsel have urged our consideration of two recent cases: *In re Marriage of Patrino* (1973) 36 Cal.App.3d 186 [111 Cal.Rptr. 367], is clearly distinguishable from the case at bench, not only with respect to comparative ability to pay, but in *Patrino* the three minor children were awarded to the husband and the wife was able to seek employment free from parental responsibilities. (Civ. Code, § 4801, subd. (d).) Wife's reliance on *In re Marriage of Dennis, supra,* 35 Cal.App. 3d 279, is also without merit. The duration of the marriage in *Dennis* was 25 years, the wife was over 50 years of age with undisputed eyesight problems, which during the allowed four years of fixed terminable support could substantially impair her ability to perform her only skill, that of a seamstress.

Whatever the implications of *Dennis* (*supra*), we emphasize that in our view the abuse of discretion involved in the case at bench relates solely to the *amount* and *duration* of spousal support, and not to the fact that such support was ordered fixed and terminable by the trial court. ▮ As noted in *Patrino, supra,* section 4801, subdivision (d), of the Civil Code now provides for the absolute termination of spousal support unless the trial court in its original order retains jurisdiction to extend an order for

support. We think this evidences a legislative intent to diminish constant modification proceedings, to provide both parties some degree of post-dissolution economic stability by minimizing the inherent apprehension of the possible loss or extension of spousal support, and in proper cases to eliminate permanent burden or dependence, thus motivating both parties to seek a new life completely free from a former marital failure.

The judgment insofar as it awards the community property of the parties and fixes the amount and duration of spousal support is reversed. In all other respects the judgment is affirmed. Wife is to recover her costs.

Richardson, P. J., and Janes, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 22, 1974.