[No. 3054-3. Division Three. March 29, 1979.]

*In the Matter of the Marriage of* CECILIA A. FREEDMAN,
*Respondent, and* ROBERT WARD FREEDMAN,
*Appellant.*

*Anderson & Fields* and *Wolfgang R. Anderson,* for
appellant.

*Short, Cressman & Cable* and *John O. Burgess,* for
respondent.

ROE, J.—The marriage of Robert Freedman and Cecilia
Freedman was dissolved in January 1977. Robert has

appealed the property division and the award of maintenance on grounds that the trial court abused its discretion. Robert makes several claims of error, but the only one having precedential value, and which is published here, is that the trial court erred when it evaluated his law practice at $100,000. Robert claims that this amount represents an improper inclusion of goodwill in determining the value of community assets.

The parties were married several years before the husband finished law school; in fact, the wife worked while he was in law school and bore two children during that time. The husband became an attorney and developed his practice during the existence of the marital community, although he has had the present sole practice less than 3 years.

At the outset the husband strenuously argues that *Koehler v. Wales,* 16 Wn. App. 304, 556 P.2d 233 (1976), mandates that since lawyers have no proprietary interest in their clients, there is no goodwill in a law practice. Thus, there is none to be considered in a dissolution action. Whatever may have been the law, and there is respectable authority for not allowing goodwill of a law practice, nevertheless, this issue is foreclosed. *In re Marriage of Fleege,* 91 Wn.2d 324, 588 P.2d 1136 (1979), was decided after this matter had been prepared for appeal. Extended discussion is necessary in order to understand the approach we take.

■■ *In re Marriage of Fleege, supra,* involved a dissolution of a marriage of approximately 32 years of a dentist and his wife, a trained dietitian. The net profits of the dentist in 1975 were $106,452.61. The trial court refused to include goodwill as an element in property disposition. Finding that this was error, the Supreme Court stated, "Goodwill is property of an intangible nature and is commonly defined as the expectation of continued public patronage." *In re Marriage of Fleege, supra* at 325. The consideration was not whether the goodwill of the practice could be sold without the personal service of the respondent, but whether it had a value to him. Recognizing that a

number of courts had refused to assign a value to goodwill of a professional practice in divorce proceedings, nevertheless, the court stated, "[T]he modern tendency is to acknowledge the economic facts and take such goodwill into account." *In re Marriage of Fleege, supra* at 329. It held on page 330 that:

> The value of goodwill to the professional spouse, enabling him to continue to enjoy the patronage engendered by that goodwill, constitutes a community asset and should be considered by the court in distributing the community property.

The cause was remanded to the superior court with directions to determine the value of the goodwill as it existed at the date of dissolution, taking into account the testimony of the experts and the other factors which were mentioned by the court in its opinion. This was a 5–to–4 decision with a strong, rather persuasive dissent. It is true that *Fleege* involved a dentist and the case at bench involves a lawyer. But, as we shall see, it makes no difference.

At page 326 of *Fleege,* referring to the case of *In re Marriage of Lukens,* 16 Wn. App. 481, 558 P.2d 279 (1976), the court stated, "We approve both the reasoning and the result reached in that case." *Lukens* was a dissolution action involving an osteopathic physician. Reaching the conclusion that goodwill was an asset to be distributed, the court referred on page 484 of *Lukens* to *In re Marriage of Lopez,* 38 Cal. App. 3d 93, 113 Cal. Rptr. 58 (1974), and mentioned that case frequently throughout the balance of the opinion. *Lopez* was a dissolution action which involved an attorney at law. Although there is not internal consistency in the cases as to the elements to be considered, yet some general principles do emerge.

> The determination of its value can be reached with the aid of expert testimony and by consideration of such factors as the practitioner's age, health, past earning power, reputation in the community for judgment, skill, and knowledge, and his comparative professional success.

*In re Marriage of Fleege, supra* at 326. These same five factors were stated in *In re Marriage of Lukens, supra,* but in addition the court in *Lukens* quotes with approval *In re Marriage of Lopez, supra,* and at page 486 says there is no definite formula for goodwill. It "is not synonymous with the spouse's expectation of future earnings." It is to be measured by present value based upon past results. In addition to the five factors previously mentioned, *Lukens* also indicated (1) length of time the professional has been practicing, and (2) particularly past profits of the practice which would reflect any income previously generated by his goodwill. Note was made that goodwill does not exist separately but is incidental to other assets of the business and that attention should be given to the physical and fixed resources of the practice. *In re Marriage of Lukens, supra* at 486–87.

Going then to *In re Marriage of Lopez, supra,* the court placed emphasis upon fixed assets, *i.e.,* cash, furniture, accounts receivable, costs advanced, and work in progress. On page 109 the court indicates amongst the factors already mentioned are the nature and duration of his business as a sole practitioner or as a member of a partnership or professional corporation. The court commented in *Lopez* that a considerable amount of uncertainty attaches to any valuation. The conceptual view is based on future receipts which the assets will produce. The court further stated:

> *[I]n marital cases the expectancy of future earnings is not synonymous with, nor should it be the basis for, determining the value of "goodwill" . . . but is simply a factor . . .*
>
> *. . .*
>
> *. . . considerable care and caution,* since [dissolution] is a unique situation in which the continuing practitioner is *judicially forced to buy an intangible asset at a judicially determined value and compelled to pay a former spouse her share in tangible assets.*

*In re Marriage of Lopez, supra* at 108–10.

With these guidelines in mind, we must then look to the record to see if they were followed in the case at bench. The

husband testified there was no value to the goodwill. Two knowledgeable and competent accountants testified: one for the husband who also ascribed no value to goodwill, the other, Mr. Benson, a witness for the wife. He supplied the information upon which the court apparently based its decision. According to the record, Mr. Benson considered the number of years in practice, the husband's age, health, reputation, success, and the profit trend. He had never appraised a law practice before. His position was, "the most appropriate method . . . is one year's gross receipts." He compared it to accounting or an insurance practice. He also used a formula to capitalize earnings. Mr. Freedman's gross receipts in 1974 were approximately $103,000, and in 1976 (the year before the divorce), $116,000. Mr. Benson stated the goodwill was "worth in the neighborhood of $100,000." By the other capitalization methods he reached a figure of $150,000. He based his view of Mr. Freedman's reputation in the community upon the statement made to him by the wife's attorney that it was good.

It is obvious that he did not consider all of the factors which the court has said should be considered. In fairness to the trial court and all counsel, it must be noted that *In re Marriage of Fleege, supra,* was not available to them at the time of the dissolution hearing in 1977. Significantly omitted from the valuation of the goodwill was the past settled earning power of the husband. As a sole practitioner, his work experience was only 3 years. In 1974, he netted $55,000, subject to a $12,000 tax, which left a usable income of $43,000. In 1975, he netted $71,800, subject to a $20,000 tax, which left a usable income of $51,800. In 1976, he netted $80,500, subject to a $20,500 tax, which left a usable income of $60,000. Included in this sum was a one-time fee of $21,000, which was his share of a fee for representing a plaintiff.

Eighty percent of Mr. Freedman's practice is from one client, Pemco, as an insurance defense counsel; 10 percent represents other insurance carriers; and 10 percent is general practice. The evidence indicated that his practice from

Pemco depended upon the whim and the caprice of the insurance claims managers who frequently changed attorneys. Should this happen, Mr. Freedman could suddenly lose substantially all of his practice.

It would appear that the husband has limited notoriety as a trial lawyer and has a reputation as a specialist in defense work for insurance carriers. Thus, he would not be expected to generate much general practice should he lose that client. He is a sole practitioner working approximately 60 to 70 hours a week. It would seem that such effort is more than should normally be expected or could be continued by a man of this age (53). The reputation in the community which the practitioner enjoys should be based upon evidence of what it is in the community, not merely the knowledge of one lawyer, and in particular, the lawyer for the opposing party. It should include his skill and knowledge in the general field of the law as well as his specialization. Three years is minimal and consideration should be given to that. Health must be considered. There is evidence that he is suffering from a hearing problem.

No reference was made to any past profits of the practice which would reflect any income previously generated by goodwill, such as a long history of representing a corporate client. Rather, the accountant evaluated merely the income. No reference was made to other fixed assets as bearing on the value of goodwill. As mentioned in *Lopez,* the nature and duration of the business as a sole practitioner or as a member of a partnership or professional corporation should be weighed. This obviously was not considered by the accountant who gave the evidence which supported the judge's conclusion.

Although we must express some surprise, if not shock, at the trial court's valuation of $100,000 for the goodwill of this sole practice, nevertheless, before we could decide whether or not there has been an abuse of discretion, evidence should be taken on all of the factors mentioned herein, including the testimony of other lawyers.

This is not a case where an enforceable contract for the sale of goodwill would survive disability or death. An allowance for goodwill against Mr. Freedman, coupled with the fact he might become ill for a substantial period of time or die, would deprive him and his heirs of what might be a normal realization for 30 years' work.

Accordingly, this case must be remanded to the Superior Court for proceedings in harmony herewith.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied May 3, 1979.

Review denied by Supreme Court August 22, 1979.