[No. 2244-2.    Division Two.    October 18, 1976.]

MARY FUNG KOEHLER, *Appellant*, v. OWEN J. WALES, *Respondent.*

*William L. Williams,* for appellant.

*William W. Brown* and *Koenigsberg, Brown, Sinsheimer, Stone & Meltzer,* for respondent.

PEARSON, J.—This appeal involves a dispute between two King County attorneys concerning a written agreement under which one was to assume the law practice of the other for a period of 14 months. Plaintiff, Mary Fung Koehler, brought this action against Owen J. Wales, seeking an accounting under the agreement as well as damages for alleged defamation and interference with her business relationship with former clients. She appeals an adverse judgment. For the reasons stated below, we think the judgment should be modified so that the conclusions of the trial court are consistent with the findings.

The agreement recited that plaintiff would be absent from the country for 14 months and defendant would assume "the duties and obligations" of her law practice for that period. Plaintiff was entitled to all income from cases completed by her prior to the effective date of the agreement; on partially completed cases the fees would be shared on the basis of the work done by each on a time basis; on new cases, defendant was entitled to 85 percent and plaintiff 15 percent of the revenues.[1] Defendant was required to pay all of the office expenses and provide his own malpractice insurance, and attempt to continue the practice in the existing law office, but was not to make any change without notice to plaintiff. The disputed part of the agreement (paragraph 7) provided:

It is agreed by the parties hereto that the intention of

[1] There appears to be little dispute over fees on cases which plaintiff had completed or partially completed prior to the effective date of the agreement.

this Business Agreement is to preserve and continue the practice of Koehler [plaintiff] and to provide Wales [defendant] with an income sufficient for ordinary sustenance, which sum, for the purpose of this Business Agreement, shall be defined as being no less than $500.00 per month net income to Wales. If the income falls short of the prescribed minimum, Wales shall be authorized to draw on Koehler's attorney's account in order to provide for the expenses of maintaining the law office and, if necessary, to provide for his personal welfare up to the amount of $500.00 per month as provided for hereinabove, if the income falls below the amount of $500.00 per month. Wales shall forward to Koehler an accounting of the operation on a monthly basis, said accounting to be in the form of a monthly statement prepared by Wales.[2]

The agreement contained no provisions relating to termination of the relationship other than to give defendant an "option" to become a "full partner" with plaintiff to be exercised within 6 months of plaintiff's return and with no monetary payments required.

It is undisputed that during the 14 months[3] while plaintiff was absent defendant rendered no monthly accounting to plaintiff. After plaintiff's return, the partnership option was not exercised and defendant left plaintiff's office, taking with him substantially all of the files that had been opened during her absence. These files, the trial court found, "constituted all or virtually all of the active files at the Lake Forest Park office on the date of the defendant's departure."

The trial court also found that an accounting submitted during the pendency of the action was accurate except for a $1,000 error in defendant's favor. (This was stipulated by the parties.) The trial court further fixed plaintiff's damages for "business interference" at $4,000, but allowed "actual damages . . . of $1.00" for defamation, stating that actual damages were "minimal."

---

[2] This paragraph was drafted by respondent and included in the agreement at his request.

[3] The period of the agreement was extended for 1 month after plaintiff's return.

A principal assignment of error on appeal is a conclusion of the trial court that plaintiff's damages for "business interference" were totally offset by the requirement of paragraph 7 of the agreement which entitled defendant to a "guaranteed minimum of $500 per month."[4] Accordingly, neither party was allowed a recovery against the other. Another assignment of error relates to the asserted refusal of the trial court to allow plaintiff any compensation for new cases opened while she was absent, but not closed prior to the termination of the agreement at the end of September 1972. Finally, it is contended the trial court should have allowed more than $1 damages for slander.

Because of certain defenses asserted by defendant, it is necessary that we consider the nature of the relationship between the parties as contemplated by the "Business Agreement."

Generally, defendant claims the parties should be left as the court found them, since (1) the "business agreement" established an illegal fee sharing agreement not based upon the proportion of work done by each (CPE 34, (CPR) DR 2-107(A)(2)); and (2) plaintiff's absence from the state disqualified her from conducting a law practice through another, and from sharing fees generated by another. *See State ex rel. Foster v. Washington State Bar Ass'n*, 23 Wn.2d 800, 162 P.2d 261, 160 A.L.R. 1366 (1945).

We reject these contentions. The agreement is ambiguous as to the nature of the relationship it created. Both parties participated in preparing the agreement, and we will presume that both intended a legal, rather than an illegal, relationship if such a construction is reasonably possible. We think it is.

We start with the general proposition that an attorney who for any reason is unable to take care of his client's pending matters has a duty to the clients to see that no avoidable disadvantage occurs by virtue of his or her inability to take care of them. To this end, the sole practitioner

---

[4]It is not clear how the trial court computed defendant's claim under this provision.

who becomes ill, goes on vacation, or the like, may properly arrange with another competent lawyer to do what is necessary to protect the immediate interests of the clients during any period of absence or incapacity. Where the absent lawyer practices in a partnership or has an associate in the firm, it is customary for such lawyer to leave his pending matters for care by the partner or the associate.

In any case, however, the client always has the option to substitute another attorney of his choice, whether the absent lawyer has referred his client's pending matters to a partner, an associate, or to another competent lawyer not formerly associated in practice with such absent lawyer. The reason is simply this. Clients are not merchandise. They cannot be bought, sold, or traded. The attorney-client relationship is personal and confidential, and the client's choice of attorneys in civil cases is near absolute.

We do not believe either lawyer in this case intended to violate these axiomatic principles. Plaintiff's testimony that she notified her clients of her prospective absence and that defendant would be looking after their affairs is an indication that one of the objectives of the agreement was to protect their interests. The provision of the agreement that plaintiff was entitled to all fees on completed work and proportionate fees on partially completed work was totally proper and consistent with (CPR) DR 2-107.

The agreement, however, was intended to accomplish another objective, namely, to "preserve and continue the practice of Koehler" so that she would have a practice at the end of the 14-month period of absence. There is nothing basically improper about this objective, either, although it may be difficult to accomplish when the absence is prolonged. The lawyer who leaves his client's matters in the care of associates or partners while temporarily absent for short periods of time anticipates that he will return to an ongoing practice. Such a lawyer may ethically share in the profits of the business during his absence, even though he has not participated in the work generating the fees. There is no prohibition in the Code of Professional Responsibility

or the canons which preceded it that prevents law partners or associates from sharing fees regardless of who works for the client. The primary obligation of lawyers associated in practice is not to mislead the clients as to who is responsible to the client. (CPR) DR 2-102 (B) and (C).

In our view, the agreement in question was in the nature of a partnership agreement. Equally persuasive arguments, however, can be made that defendant became an "associate" (employee) of plaintiff during her absence. The precise label placed on the relationship is not important, for in either event the fee sharing aspects would be ethically proper.

It seems evident from what we have said that defendant's challenge to the legality of the agreement must be rejected. We conclude that plaintiff was entitled to an accounting of profits in accordance with the terms of their agreement.

In this connection the trial court approved an accounting rendered by defendant, except for a finding that $1,000 of expenses were overstated. This accounting under the contract covered only the revenues and expenses received and incurred during the 15 months the contract was in effect. We agree with plaintiff that the court's conclusion that defendant was entitled to a gross credit of $6,000 under the $500 monthly guaranty provision of the contract is inconsistent with the accounting approved by the court in its findings. Accordingly, the judgment should be modified so as to reflect a net credit to defendant of $1,086.51, as shown in appendix A,[5] instead of $4,000 as allowed by the court. We reject plaintiff's contention that defendant's failure to make monthly accountings as required by the contract should result in a forfeiture of the monthly guaranteed income. Plaintiff's action for an accounting under the contract is equitable in nature. *Garey v. Pasco*, 89 Wash. 382, 154 P. 433 (1916). There is no showing of any prejudice to plaintiff in the failure to account monthly. Further-

[5]The appendix is not important to an understanding of this opinion and therefore will not be published.

more, the requirement for a monthly accounting was not specifically made a condition precedent to defendant's entitlement to the $500 guaranteed monthly income, and we prefer to interpret the requirement of monthly accounting as a promise rather than a condition, to the extent the provision is ambiguous. *Prager's, Inc. v. Bullitt Co.*, 1 Wn. App. 575, 463 P.2d 217 (1969); 3A A. Corbin, *Corbin on Contracts* § 635 (1960). Consequently, the court was justified in allowing defendant credit of $1,086.51.

We turn to plaintiff's second major contention, that defendant should be required to account for fees earned on the cases which defendant had commenced during the contract period but not completed when their association was terminated in September 1972. We agree with plaintiff that a reasonable construction of the contract in light of its expressed purpose to "preserve her practice" evidences an intention that she receive 15 percent of the gross fees on all matters which had a genesis during the contract period.

However, our review of the record persuades us that defendant did produce all of the information demanded by plaintiff, including all of the files which he had taken from the office. Defendant also responded to all questions propounded of him by plaintiff concerning fees. Many of the cases had not been closed and were in various stages of litigation. There was no specific demand by plaintiff for a more detailed accounting with reference to those cases prior to or during the trial. Defendant's testimony concerning prospective fees was somewhat vague because the ultimate results were not known. Plaintiff did testify over defendant's objection that she estimated the gross fees on those matters to be $26,000. If the trial court had allowed plaintiff the agreed 15 percent of that sum, the judgment in her favor should have been $3,900, based upon her own estimate. Instead, the trial court allowed her $4,000 damages on a "business interference" theory. It is evident to us that the trial court did measure her damages for "business interference" by using the formula for sharing fees as fixed by the contract. Thus we see no legitimate complaint with

reference to those cases under the evidence presented, unless some other theory is available which would give plaintiff a proprietary interest in her former clientele or clients who came to the office and engaged defendant to represent them in her absence.

In her complaint, plaintiff did claim such a proprietary interest but she has abandoned that theory on appeal, and with good reason. A lawyer has no proprietary interest in former clients. *Geffen v. Moss*, 53 Cal. App. 3d 215, 125 Cal. Rptr. 687 (1975). The relationship between an attorney and client is personal and confidential. The attorney who takes a prolonged leave of absence from practice cannot reasonably anticipate the relationship will continue or that it will necessarily apply to new matters brought to a substitute attorney during that absence. The confidences communicated to the substitute attorney may indeed be confidential as to him. This fact is highlighted by defendant's testimony that many clients who sought his services during the period in question were personal acquaintances of his and consulted him personally without reference to where he was practicing. As to the few who had formerly been plaintiff's clients, defendant took the position that he had developed an attorney-client relationship with them on new matters and was entitled to conclude that representation, once his association with plaintiff was terminated, without interference from her. But whatever be the merits of these assertions by defendant,[6] it still remains that plaintiff's theory requested the court to place a price tag on the goodwill of a law practice. Such a result is contrary to public policy. In *Geffen v. Moss*, *supra*, the court stated at page 693:

> The attempted sale of the expectation of future patronage by former and current clients of a law office coupled with an agreement to encourage said clients to continue to patronize the purchaser of the physical assets of the

---

[6]It is obvious that lawyers, acting in good faith toward one another and with due regard for the welfare of clients, should allow the clients under these circumstances to choose with which attorney their cases should go.

office, under the facts of this case, may well be said to constitute an attempt to buy and sell the good will of a law practice as a going business, contrary to public policy, and that the portion of the agreement purporting to so do is invalid and unenforceable.

In accord with that statement of policy we decline to recognize that plaintiff had any proprietary interest in her former law practice and the trial court was correct in restricting the recovery to the contractual percentage.

Finally, we consider plaintiff's contention that the $1 award for defamation was inadequate. The fact that a court may award substantial damages absent proof of actual damages where the defamation is libel per se (*Corbin v. Madison*, 12 Wn. App. 318, 529 P.2d 1145 (1974)) does not compel an award of substantial damages where the actual damages are specifically found by the trier of fact to be minimal. Plaintiff cites no case in which the contrary to such a principle is established and we have found none. It remains within the special province of the trier of fact to fix the damages. *Getchell v. Auto Bar Sys. Northwest, Inc.*, 73 Wn.2d 831, 440 P.2d 843 (1968). In this case those to whom the defamatory statements were made testified for plaintiff. The trial court was obviously of the viewpoint that the statements had little prejudice against plaintiff in her profession and that her damages were, in fact, minimal.

The judgment is affirmed as modified to allow defendant an offset of $1,086.51 against the $4,001 judgment awarded to plaintiff.

Plaintiff is awarded costs on appeal.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied November 17, 1976.