[No. 46949.   En Banc.   December 4, 1980.]

ALLEN D. POWELL, *Appellant,* v. HAROLD FARRIS, *Respondent.*

*Hoff & Cross, Neil J. Hoff,* and *Geoffrey C. Cross,* for appellant.

*Christopher R. Boutelle,* for respondent.

WILLIAMS, J.—In March 1977, appellant Allen Powell, respondent Harold Farris, and one Frank LePonis entered into a business relation with the purpose of establishing a smokeshop on the Puyallup Indian Reservation. It was contemplated that cigarette sales and certain gambling operations were to be the mainstay of the business. The parties' partnership agreement provided that LePonis, a non–Indian, would deed certain real property to respondent, an enrolled member of the Puyallup Tribe of Indians, on condition that respondent arrange for restoration of Indian trust land status to the property. Appellant, also a non–Puyallup Indian, was to provide the initial capital to establish the business. Each party was to share equally in the anticipated profits.

There is no dispute that the business was duly registered with the Puyallup Tribe, that all necessary paperwork was filed according to the tribal rules, and that required tribal taxes were paid. In March of 1978, however, the tribal council revoked the smokeshop's business license because of the inclusion of a nonenrolled Puyallup Indian in the venture, a circumstance not permitted by the tribe's business code. After appellant and LePonis (who is not a party to this litigation) left the business, the tribal council renewed the business license, and respondent has been operating the business since that time.

Appellant then brought an action in Pierce County Superior Court for a dissolution of the partnership and for an accounting, seeking a one–third interest in the profits and assets of the smokeshop. Upon respondent's motion, the trial court dismissed the case for lack of subject matter jurisdiction. The Court of Appeals determined that the matter involved fundamental and urgent issues of broad public import and certified the case to us pursuant to RCW 2.06.030 and RAP 4.2. We vacate the order of dismissal and remand to the trial court for further proceedings.

The sole issue we must decide at this stage of the proceedings is whether the state court has jurisdiction over the subject matter of an action for dissolution of a partnership and an accounting where the defendant is an enrolled tribal Indian, the plaintiff is a non–Indian, and the accounting is sought from proceeds of a business located on tribal trust land and licensed by the tribal council.[1] In deciding this question, we think it may be helpful to set forth a few of the principles governing assertions of state power over the affairs of Indians and Indian tribes on federal reservations.

■ It is by now axiomatic that state power over Indians on a reservation is limited to the power granted by Congress in 25 U.S.C. § 1322 (1976) (originally enacted as Act of August 15, 1953, ch. 505, § 7, 67 Stat. 590, commonly known as Public Law 280). Public Law 280 authorized Washington and some other states to assume jurisdiction over "civil causes of action" and "criminal offenses" occurring on a reservation. 67 Stat. 590. Pursuant to that grant of authority, the Washington legislature enacted RCW 37.12, in which the state bound itself to exercise "criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state" in accordance with Public Law 280. RCW 37.12.010. The statute

---

[1]Parenthetically, it may be added that jurisdiction over the person of respondent is not at issue here. Respondent was personally served outside the exterior boundaries of the Puyallup Reservation; in fact, he asserted a counterclaim and thus waived any possible defense of lack of in personam jurisdiction. RCW 4.28-.020.

specified that tribal consent was necessary for the assumption of state jurisdiction except in certain specified areas not applicable here. RCW 37.12.010, .021. Moreover, Public Law 280 did not confer on any state the authority to tax or encumber any Indian property or deprive any Indian or tribe of hunting or fishing rights, and the statute specifically disclaimed such power. *Chief Seattle Properties, Inc. v. Kitsap County,* 86 Wn.2d 7, 14, 541 P.2d 699 (1975); 67 Stat. 589; RCW 37.12.060.

Respondent argues that since Washington in RCW 37.12.010 has not asserted jurisdiction over the Puyallup Tribe as to a cause of action for dissolution and accounting, and since the tribe has not consented to additional jurisdiction pursuant to RCW 37.12.021, the superior court has no jurisdiction over the subject matter of this action. The response to this assertion is not quite so uncomplicated.

It is well settled that even without the jurisdiction conferred by Congress in Public Law 280, the state may exercise some jurisdiction over some reservation conduct. In particular, it may impose its laws on reservation conduct involving only non–Indians. It may, for example, impose a tax on a non–Indian's personal property held on tribal land. *Chief Seattle Properties, Inc.,* at 18. It may impose a tax on non–Indian customers of Indian retailers doing business on the reservation. *Washington v. Confederated Tribes,* 447 U.S. 134, 159, 65 L. Ed. 2d 10, 32, 100 S. Ct. 2069 (1980); *Moe v. Confederated Salish & Kootenai Tribes,* 425 U.S. 463, 48 L. Ed. 2d 96, 96 S. Ct. 1634 (1976).

It is equally clear that an individual Indian who is off the reservation is subject to the laws of the State of Washington to the same extent that a non–Indian or alien is so subject. *State v. Williams,* 13 Wash. 335, 339, 43 P. 15 (1895); United States Department of the Interior, *Federal Indian Law* 363 (1958); *see also* 1 *Studies in American Indian Law* 241 (R. Johnson ed. June 9, 1970) (unpublished study in Washington State Law Library).

The more difficult question arises in situations where, as here, both Indians and non–Indians are involved in a dispute which may have an impact on tribal property. In 1959, the United States Supreme Court addressed this issue in *Williams v. Lee,* 358 U.S. 217, 3 L. Ed. 2d 251, 79 S. Ct. 269 (1959). In that case the court set aside a judgment by a court in a state which had not assumed jurisdiction under Public Law 280. The judgment had authorized a non–Indian to sue an Indian in state court to recover on a debt which had been entered into on the reservation. In denying a right of recovery to the non–Indian, the court explained that permitting the action would infringe on the tribal sovereignty of reservation Indians. *Williams v. Lee, supra* at 220. The test for whether to allow state assertions of jurisdiction in such circumstances was stated as follows:

> Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.

*Williams v. Lee, supra* at 220. The court later refined the infringement test as follows:

> It must be remembered that cases applying the *Williams* test have dealt principally with situations involving non–Indians. See also *Organized Village of Kake* v. *Egan,* 369 U. S., at 75–76 [7 L. Ed. 2d 573, 82 S. Ct. 562 (1962)]. In these situations, both the tribe and the State could fairly claim an interest in asserting their respective jurisdictions. The *Williams* test was designed to resolve this conflict by providing that the State could protect its interest up to the point where tribal self–government would be affected.

*McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 179, 36 L. Ed. 2d 129, 93 S. Ct. 1257 (1973). *See also Washington v. Confederated Tribes, supra* at 156.

We come then to deciding, where the State has not assumed jurisdiction under Public Law 280, whether the assertion of state jurisdiction would infringe the right of the Puyallup Tribe of Indians to "make their own laws and be

ruled by them." *Williams v. Lee, supra* at 220. We are of
the opinion that it would not.

▇▇ The parties concur that the contract in this case was
executed off the reservation. By its terms the parties agreed
to establish a business on the reservation, although at the
time of contracting the real property involved was not
tribal trust property; indeed, one of the explicit conditions
of the agreement was that respondent would procure trust
status for the land on which the business was to be located.
While part of the performance of the contract occurred on
the reservation, the promise of appellant to provide capital
and of LePonis to convey the land could have been per-
formed elsewhere. The record does not specify.

The relief sought by appellant is simply a dissolution of
the partnership established pursuant to the contract. Part-
nership dissolution is a common law form of action ordi-
narily heard in state courts of general jurisdiction.
Moreover, it is not asserted that a tribe has an interest in
regulating a contract made off the reservation.

Under these circumstances, we cannot say that state
court jurisdiction over this matter would infringe the sov-
ereignty of the tribe. The business is still in existence, and
the parties do not dispute that it meets the requirements of
the tribe's business code. There is nothing to indicate the
tribe cannot continue to tax and otherwise regulate the
smokeshop. Indeed, that the tribe retains its regulatory
authority is shown by its denial of the business permit
because of appellant's participation and its subsequent
reinstatement of the permit after he had been asked to
leave the reservation. Thus, any dissolution of the partner-
ship created by this contract will have little or no effect on
the tribe's continuing authority over the business. *Williams
v. Lee, supra; Washington v. Confederated Tribes, supra* at
156. The effect of a state court judgment would simply be
to declare that the partnership is dissolved.

▇▇ As to the accounting, appellant merely seeks a
money judgment from respondent personally. Since an
accounting is an equitable action, *Koehler v. Wales,* 16 Wn.

App. 304, 309, 556 P.2d 233 (1976), the trial court has broad discretion to grant or deny it depending on all the facts and circumstances. *See, e.g., J.L. Cooper & Co. v. Anchor Sec. Co.,* 9 Wn.2d 45, 113 P.2d 845 (1941); *Port of Walla Walla v. Sun–Glo Producers, Inc.,* 8 Wn. App. 51, 504 P.2d 324 (1972). What property may be levied upon to satisfy such a judgment is a question for the trial court upon remand.[2]

The order of the dismissal is vacated, and the cause is remanded to Pierce County Superior Court for further proceedings not inconsistent with this opinion.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, and HICKS, JJ., concur.

DOLLIVER J. (dissenting)—Do the courts of the State of Washington have jurisdiction over the business activities of a member of an Indian tribe when such activities are conducted on trust lands and are within the boundary of an Indian reservation? Contrary to the views expressed by the majority, I do not believe such jurisdiction exists, and, therefore, dissent.

Subject matter jurisdiction is "the authority of the court to hear and determine the class of actions to which the case belongs. . . . A court lacking such jurisdiction may do nothing other than enter an order of dismissal." (Citations omitted.) *In re Adoption of Buehl,* 87 Wn.2d 649, 655, 555 P.2d 1334 (1976). In *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 170–71, 36 L. Ed. 2d 129, 93 S. Ct. 1257 (1973), the Supreme Court, quoting from the United States Department of the Interior, *Federal Indian Law* 845 (1958), said "'State laws generally are not applicable to tribal Indians on an Indian reservation except where Congress has expressly provided that State laws shall apply." It is conceded that defendant is a tribal Indian on an Indian

---

[2]This disposition makes it unnecessary for us to consider respondent's claim that the contract is unenforceable because of illegality. This is a proper question for the trial court to address on remand.

reservation and that even though Public Law 280 authorized Washington to assume jurisdiction over certain matters, the state has never implemented the federal act, vis-a-vis the Puyallup Tribe.

In *Williams v. Lee,* 358 U.S. 217, 3 L. Ed. 2d 251, 79 S. Ct. 269 (1959), the Supreme Court laid down the rationale for the rule on state jurisdiction: "Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them." *Williams,* at 220.

Given the clear language of *McClanahan,* the circumstances of this case and the fact that the actions brought by plaintiff, if allowed, would obviously infringe on the right of the Puyallup Tribe to make its own laws and be ruled by them, I would think the matter to be ended and the dismissal of the trial court upheld.

The majority, believing otherwise, begins its analysis by pointing to what it calls a "refine[ment]" of the *Williams* test which it claims is found in *McClanahan* and in *Washington v. Confederated Tribes,* 447 U.S. 134, 65 L. Ed. 2d 10, 100 S. Ct. 2069 (1980). *McClanahan* involved the imposition of state taxes upon a member of an Indian tribe living on a reservation. No consent was given by the tribal member. The court did not rely upon *Williams,* stating that it applied principally to situations involving non-Indians (the exact case here). *Confederated Tribes* said the application of the state cigarette tax to non-Indian purchases of cigarettes on an Indian reservation did not infringe on the right of the reservation Indians to "make their own laws and be ruled by them." The real nexus of *Confederated,* of course, was not non-Indian against Indian but rather the application of the tax laws of the State of Washington to an activity on an Indian reservation. I see nothing in either *McClanahan* or *Confederated* which in any way either weakens or refines *Williams* as it applies to this case.

Next the majority finds comfort in that the contract was executed off the reservation. I fail to see the relevance of

this fact. The majority says at page 787 "it is not asserted that a tribe has an interest in regulating a contract made off the reservation." But, surely, that is not what this case is about. It is about a non–Indian asserting state jurisdiction over a member of an Indian tribe on a matter the subject of which is on an Indian reservation. That the contract was made off the reservation is immaterial to the *Williams* test. The action in this case, just as in *Williams,* arises because of the activities of a retail operation *on* the Indian reservation.

The majority says the exercise of state jurisdiction here would not infringe on the sovereignty of the tribe or lessen the tribe's ability to tax and otherwise regulate the smoke-shop. Again, this is irrelevant to the issue. *Williams v. Lee, supra,* was an action to collect for goods on credit sold by Lee, a non–Indian, who operated a general store on the Navajo Indian Reservation, to Williams, a Navajo Indian. As in this case, the exercise of state jurisdiction would not have prevented the Navajo Indian Tribe from "tax[ing] and otherwise regulat[ing]" the general store. The majority asserts this bringing of the action for partnership dissolution and accounting to be talismanic on the question of jurisdiction. I fail to see, however, where this type of action provides subject matter jurisdiction any more than an action to collect for goods sold on credit did in *Williams v. Lee, supra.*

I can understand the interest of the plaintiff in attempting to bring this suit in state courts. However, he made the agreement with a Puyallup Indian to take part in the operation of the business on the Puyallup reservation. The situation in which the plaintiff now finds himself may be one for which he is entitled to redress, but it cannot be through the courts of this state. If this seems harsh, the remedy is with the Congress which alone can grant jurisdiction by the state over Indians on Indian reservations. *Williams v. Lee, supra.*

I dissent.