[No. 12049–2–I.   Division One.   January 11, 1985.]

DELORES THOMSEN, ET AL, *Plaintiffs,* LEWIS NORTHERN,
ET AL, *Appellants,* v. KING COUNTY,
ET AL, *Respondents.*

506

*Robert E. Ordal*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Susan Agid* and *Stephen O. Kenyon, Deputies*, for respondents.

SWANSON, J.—Lewis Northern and his wife appeal the superior court order dismissing their petition for a writ of certiorari based on a determination that King County health enforcement jurisdiction was proper over non–Indians residing on fee reservation land and that the King County Zoning and Subdivision Examiner's decision was not arbitrary and capricious or contrary to law.

Lewis Northern and his wife are non–Indians who purchased from the developer their homesite on alienated land within the Muckleshoot Indian Reservation in King County. Their lot is served by a septic tank along with a well shared with other owners, both of which the developer had installed without tribal or county approval. It is undisputed that the sewage disposal and water systems violate King County Health Department Regulations because of the septic tank's location within 100 feet of the well, a soil depth of less than the requisite 30 inches overlying an

impermeable layer or groundwater table, and a soil percolation rate in excess of the maximum allowable 15 minutes per inch.[1]

Following the Northerns' lot purchase, the Muckleshoot Indian Tribe contacted the King County Health Department regarding the adequacy of the Northerns' lot's sewage and water systems and decided to pursue joint county–tribal enforcement action in the matter. Since tribal health standards had not yet been adopted, the Tribal Council decided to review applications under the County's health standards until adoption of tribal standards.

In October 1979, the County informed the Northerns of alleged county and state health standard violations and the need for corrective action. Subsequent engineering reports indicated that the Northerns' lot could not meet King County design standards. In the absence of any corrective action, a civil penalty order was issued in January 1980, imposing a $10–per–day penalty.

The Northerns appealed the civil penalty order to the King County Hearing Examiner, who concluded (1) that

---

[1]The applicable King County Board of Health Regulations are as follows:

"14 (14). No disposal field and septic tank system shall be constructed, maintained or used wherein the plumbing fixtures draining to the system are not supplied with water under pressure from an approved source. If water is to be provided from a private well a recorded protective covenant shall be required prohibiting, within 100 feet of the well, any of the following: cesspools, sewers, privies, septic tanks, drainfields, or any other receptacles for the disposal of sewage; except that tight sewer lines may be within 100 foot radius, but not within 50 feet of the well.

"10 (3). Requirements for approval include a minimum depth in the drainfield of four feet of permeable soil overlying any impermeable layer, any cemented layer or overlying the ground water table, or the elevation of ground water during the wet season. Where conditions permit, this minimum depth may be attained with the use of permeable cover material not to exceed 18 inches: provided, under no condition shall there be less than 30 inches of original permeable soil overlying any impermeable layer or ground water table and in no case shall a system be designed wherein the drainfield or filter material is located in the cover material.

"10 (11). Percolation Rate and Required Absorption Area for Single Family Dwellings.

"When the average percolation rate exceeds 15 minutes per inch, special permission must be obtained from the Health Officer before the property may be developed with the use of a septic tank system."

King County had jurisdiction over the parties and subject matter of the proceeding, (2) that the Northerns' property violated the applicable King County and state health regulations for on–site sewage disposal and water systems, and (3) that a sufficient public health hazard existed to require immediate abatement of the violating conditions.

The examiner found the potential public health harm to be too great to permit the operation of a substandard system for an indefinite period while awaiting construction of a sewer system on the Muckleshoot Reservation, which may take at least several years. He imposed a $25–per–day penalty for violations more than 30 days after the order's date. In doing so, he noted that the applicants had been given considerable opportunity to correct the violations but had been unable to do so. The Northerns appealed the examiner's order to the superior court on a petition for a writ of certiorari, which was dismissed. Payment of civil penalties imposed by the dismissal order was stayed pending an appeal.

The issues are (1) whether King County has public health regulatory jurisdiction over non–Indians owning fee land on an Indian reservation within the county where such regulation is sought by the Indian tribe; and (2) whether the hearing examiner's decision was arbitrary and capricious or contrary to law where the public health harm is potential, not present, and where county public health enforcement jurisdiction was asserted only after the lot purchase.

### JURISDICTION

If Washington has public health regulatory jurisdiction over the Northerns in the present case, King County similarly has such jurisdiction over them pursuant to RCW 43.20.050. Thus the initial question is whether the State has such jurisdiction over the Northerns.

First, state laws generally do not apply to reservation Indians unless Congress expressly provides that they shall apply. *See McClanahan v. State Tax Comm'n*, 411 U.S.

164, 170–71, 36 L. Ed. 2d 129, 93 S. Ct. 1257 (1973). However, under certain circumstances explicit federal statutory language authorizing the application of state law may not be necessary if the congressional intent to do so is clear. *See Rice v. Rehner,* ___ U.S. ___, 77 L. Ed. 2d 961, 103 S. Ct. 3291, 3301–03, *reh'g denied,* 104 S. Ct. 209 (1983).

Here the respondent contends that state public health regulatory jurisdiction in this case is authorized by 25 U.S.C. § 231 or Act of Aug. 15, 1953, Pub. L. No. 280, ch. 505, 67 Stat. 588 (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321–1326, 28 U.S.C. § 1360).

Under RCW 37.12.020 (repealed 1963), enacted pursuant to Public Law 280[2] before its 1968 amendment, Washington assumed full Public Law 280 jurisdiction over the Muckleshoot Tribe with the tribe's expressed consent. *State v. Bertrand,* 61 Wn.2d 333, 339 n.2, 378 P.2d 427 (1963). Further, under RCW 37.12.010, Washington assumed full Public Law 280 jurisdiction over non–Indians and over Indians on nontrust land. *Cohen's Federal Indian Law* 362 n.125 (R. Strickland 1982). When Public Law 280 was later amended, jurisdiction acquired prior to the amendment was preserved.

However, Public Law 280 does not authorize state public health regulatory jurisdiction in this case since the United States Supreme Court has interpreted Public Law 280 civil jurisdiction as being limited to private causes of action and excluding new state regulatory jurisdiction. The Court's

---

[2]Public Law 280, as amended in 1968, provides in pertinent part:
"Assumption by State of civil jurisdiction
"(a) Consent of United States; force and effect of civil laws
"The consent of the United States is hereby given to any State not having jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country situated within such State to assume, with the consent of the tribe . . . jurisdiction over any or all such civil causes of action arising within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State." 25 U.S.C. § 1322.

interpretation was based upon its examination of the statutory language and legislative history. *See Bryan v. Itasca Cy.,* 426 U.S. 373, 383–85, 388–90, 48 L. Ed. 2d 710, 96 S. Ct. 2102 (1976); *see also Cohen's,* at 364; Collins, *Implied Limitations on the Jurisdiction of Indian Tribes,* 54 Wash. L. Rev. 479, 522 (1979). Moreover, Public Law 280 has been interpreted as excluding local jurisdiction based upon the reasoning that such jurisdiction would otherwise undermine, if not destroy, tribal self–government. *Santa Rosa Band of Indians v. Kings Cy.,* 532 F.2d 655, 661–64 (9th Cir. 1975), *cert. denied,* 429 U.S. 1038 (1977). Thus King County public health enforcement jurisdiction is not authorized under Public Law 280.

The other alleged federal statutory basis for state jurisdiction in this case is 25 U.S.C. § 231. This provision states in pertinent part:

> Enforcement of State laws affecting health and education; entry of State employees on Indian lands
>
> The Secretary of the Interior, under such rules and regulations as he may prescribe, shall permit the agents and employees of any State to enter upon Indian tribal lands, reservations or allotments therein (1) for the purpose of making inspection of health and educational conditions and enforcing sanitation and quarantine regulations . . .

25 U.S.C. § 231. The Interior Department's interpretation of this provision has been as follows:

> Although the statute says that the Secretary "shall" permit state inspection and enforcement, the longstanding position of the Interior Department is that the statute does not compel the Secretary to allow state inspection or enforcement. Thus the statute authorizes only those state activities allowed by secretarial regulations.

(Footnotes omitted.) *Cohen's,* at 377 (citing 57 Interior Dec. 162, 167–68 (1940)). However, implementing regulations for the state inspection of health and sanitation conditions have not been issued. *Cohen's.*

Moreover, judicial interpretations of 25 U.S.C. § 231 have been few. A federal court noted the absence of regulations

and concluded that the statute nevertheless evinced a congressional intent to permit state assumption of partial subject matter jurisdiction. *Confederated Bands & Tribes of Yakima Indian Nation v. Washington,* 550 F.2d 443, 446 n.8 (9th Cir. 1977) (en banc). The United States Supreme Court, without commenting on the lack of regulations, recognized congressional authorization for state health and sanitation enforcement jurisdiction under the statute. *Organized Village of Kake v. Egan,* 369 U.S. 60, 7 L. Ed. 2d 573, 82 S. Ct. 562, 570 (1962); *accord, Anderson v. Gladden,* 188 F. Supp. 666, 677 (D. Or. 1960). The Washington Supreme Court has similarly recognized the grant of state jurisdiction under 25 U.S.C. § 231:

> The state has, of course, been granted jurisdiction to inspect and regulate health, sanitation, and related matters on Indian tribal lands. 45 Stat. 1185, 25 U.S.C. § 231.

*Snohomish Cy. v. Seattle Disposal Co.,* 70 Wn.2d 668, 674, 425 P.2d 22, *cert. denied,* 389 U.S. 1016 (1967). Arguably, state jurisdiction does not exist in this case under 25 U.S.C. § 231.

However, if 25 U.S.C. § 231 does confer state regulatory jurisdiction over health and sanitation, King County jurisdiction similarly exists under RCW 43.20.050. This statute provides in pertinent part:

> In order to protect public health, the state board of health shall:
>
> . . .
>
> Adopt rules and regulations and standards for prevention, control, and abatement of health hazards and nuisances related to the disposal of wastes, solid and liquid, including but not limited to sewage, garbage, refuse, and other environmental contaminants; adopt standards and procedures governing the design, construction, and operation of sewage, garbage, refuse and other solid waste collection, treatment, and disposal facilities; . . .
>
> . . .
>
> *All local boards of health,* health authorities and officials, officers of state institutions, police officers, sheriffs, constables, *and all other officers and employees of* the state, or *any county,* city, or township thereof, *shall*

*enforce all rules and regulations adopted by the state board of health.*

(Italics ours.) RCW 43.20.050.

However, even if general state public health regulatory jurisdiction over Indian reservations were found to be lacking under 25 U.S.C. § 231, such state and, by extension, county jurisdiction nevertheless exists in this case over the Northerns, non–Indians who own fee land within an Indian reservation.

■ The general rule is that the state has civil jurisdiction over non–Indians on Indian reservations in matters not affecting Indians or tribes. *Montana Catholic Missions v. Missoula Cy.,* 200 U.S. 118, 128–29, 50 L. Ed. 398, 26 S. Ct. 197 (1906). The test is two–pronged: (1) whether such assertion of jurisdiction is preempted by federal statutes or treaties; and (2) whether it would contravene the principle of tribal self–government. *See Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 154–59, 65 L. Ed. 2d 10, 100 S. Ct. 2069 (1980).

To determine the federal preemption question, a particularized inquiry must be made into the nature of state, federal and tribal interests at stake to determine whether in the specific context, the exercise of state authority is preempted by federal law. *White Mt. Apache Tribe v. Bracker,* 448 U.S. 136, 145, 65 L. Ed. 2d 665, 100 S. Ct. 2578 (1980). Here no claim of federal preemption has been asserted. Rather, the respondent argues that state jurisdiction in this case is authorized by 25 U.S.C. § 231 or Public Law 280. Thus no federal statute or treaty seems to preempt state jurisdiction over the Northerns.

As for the second prong, the accommodation of state and tribal interests determines whether a state law infringes upon the right of tribal self–government. *Colville,* at 156. Here the respondent acknowledges that any assertion of state jurisdiction over Indian reservations, even over fee reservation land, may tend to erode tribal self–government. Brief of Respondent, at 9.

Where non–Indians on fee reservation lands are con-

cerned, the United States Supreme Court has held that a tribe's inherent sovereign power generally to regulate non-members' conduct on fee reservation land was, with exceptions, impliedly withdrawn as a necessary result of its dependent status. *Montana v. United States,* 450 U.S. 544, 564, 67 L. Ed. 2d 493, 101 S. Ct. 1245, *reh'g denied,* 452 U.S. 911 (1981). Nevertheless, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non–Indians on their reservations, even on non–Indian fee lands. *Montana,* at 565. That power is limited to non-members' consensual commercial or other relations with tribal members or situations where non–Indians' conduct on fee reservation lands threatens or directly affects the tribe's political integrity, economic security, or health or welfare. *Montana,* at 565.

The Supreme Court upheld state regulation of non–Indians' hunting and fishing on reservation lands owned in fee simple by non–Indians where the non–Indians entered into no consensual tribal relations and posed no threat to the tribe's political or economic security and the complaint had alleged no imperilment of the tribe's subsistence or welfare. *Montana,* at 566. The Court noted the tribe's traditional accommodation of the State's "near exclusive" regulation of hunting and fishing on fee reservation lands and the fact that the State's regulatory scheme did not preclude tribal regulation of non–Indian hunting and fishing on Indian owned or trust reservation lands. *Montana.*

Here no allegation has been made that the Northerns entered into a consensual commercial or other relation with the tribe; further, nothing in the record indicates that the Northerns' conduct on their fee land threatens the tribe's political or economic security. However, the Muckleshoot Tribe manifested its concern for the Indian community's health and welfare by seeking joint King County–tribal enforcement action against the Northerns.

In *Cardin v. De La Cruz,* 671 F.2d 363, 366 (9th Cir.), *cert. denied,* 459 U.S. 967 (1982), the Quinault Tribe's inherent sovereign power to impose its building, health and

safety regulations on a non–Indian's business on fee reservation land was upheld on two independent bases: (1) the non–Indian had consensually entered into a commercial relation with the tribe; and (2) his conduct threatened or directly affected the tribe's health or welfare.

Here the Muckleshoot Tribe likely has the retained inherent sovereign power to impose its health regulations on the Northerns. However, here, unlike in *Cardin,* the tribe has not yet adopted specific health regulations. Further, until the adoption of its own regulations, the tribe has decided to apply the King County health standards in reviewing applications for sewage disposal and water system installation permits. Clerk's Papers, at 4. Moreover, in this case the tribe has specifically sought joint county–tribal enforcement action.

Thus here in view of the absence of existing tribal health regulations and the tribe's decision to apply King County health standards in a joint county–tribal enforcement action that the tribe has specifically sought, the assertion of state and county jurisdiction over the Northerns does not impermissibly infringe upon tribal self–government. Consequently, the State and King County have jurisdiction in this case to enforce their health regulations against the Northerns on their fee reservation land. However, even with county jurisdiction present, the trial court's order must be overturned if the hearing examiner's decision was arbitrary and capricious or contrary to law.

ADMINISTRATIVE REVIEW

In a certiorari proceeding, the superior court acts in an appellate capacity to review an administrative agency's decision. *See G–3 Properties, Inc. v. Board of Cy. Comm'rs,* 27 Wn. App. 625, 630, 620 P.2d 108 (1980), *rev'd on other grounds,* 96 Wn.2d 359, 635 P.2d 721 (1981). A superior court's review by writ of certiorari of an administrative agency's decision is limited to a review of the record before the agency and to a determination of whether the administrative action was arbitrary and capricious or contrary to

law. *Bay Indus., Inc. v. Jefferson Cy.*, 33 Wn. App. 239, 240–41, 653 P.2d 1355 (1982). On appeal of a superior court judgment in a certiorari proceeding, the Court of Appeals makes a de novo review similar to that of the superior court to determine whether the administrative decision was arbitrary and capricious or contrary to law. *Bay Indus.*, at 241.

Arbitrary and capricious administrative action is defined as follows:

> willful and unreasonable action, without consideration and [in] disregard of facts or circumstances. Where there is room for two opinions, action is not arbitrary and capricious when exercised honestly and upon due consideration though it may be felt that a different conclusion might have been reached.

(Citations omitted.) *Barrie v. Kitsap Cy.*, 93 Wn.2d 843, 850, 613 P.2d 1148 (1980).

Here the hearing examiner's decision has the effect of forcing the Northerns off their lot since the soil will not support an on–site sewage system that complies with King County health standards. Thus until a sewage system is constructed on the Muckleshoot Reservation, an undertaking that may not occur for some time, or the tribe possibly adopts its own regulations with which the Northerns' sewage system complies, the Northerns must vacate their homesite or face a $25–per–day penalty. The Northerns thus request a less severe sanction but offer no support in the regulations, statutes or case law for such a result in their circumstances.

Moreover, it is undisputed that the septic tank on the Northerns' lot violates King County Board of Health Regulations. The examiner's conclusion based upon the evidence in the record was that

> [t]he potential for harm to ground waters, drinking water and the public health is too great to permit operation of a substandard system for an indefinite period of years.

Consequently, the hearing examiner's imposition of a civil penalty was not a willful and unreasonable action, in disregard of the facts or circumstances. Although the appellants

disagree with the result, the examiner's decision was not arbitrary and capricious when based upon a due consideration of the pertinent facts and circumstances. Here the examiner's written decision reflects careful consideration of the evidence presented. While the result may seem harsh in light of the appellants' lack of knowledge of the health violations at the time of their lot purchase, their remedy is to seek relief from the developer. The record reveals that an action against the developer was instituted.

■ Further, although the Northerns contend that the hearing examiner's decision should be overturned because King County did not assert jurisdiction over their property until after they had bought the lot, they have no vested right to continue violating health regulations. *See Seattle v. Hinckley,* 40 Wash. 468, 471, 82 P. 747 (1905) (no vested right to imperil the community's health or safety); *accord, Hass v. Kirkland,* 78 Wn.2d 929, 931–32, 481 P.2d 9 (1971).

■■ Moreover, the Washington Court of Appeals upheld a trial court's conclusion that despite the property owners' detrimental reliance, the equitable estoppel doctrine should not be applied in the face of overriding public health considerations. *Ford v. Bellingham–Whatcom Cy. Dist. Bd. of Health,* 16 Wn. App. 709, 715–16, 558 P.2d 821 (1977). In this case the record indicates that the appellants relied not upon a government official's, but rather the developer's, representations. Thus the equitable estoppel doctrine does not apply. *See State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 143–44, 401 P.2d 635 (1965). However, even if the doctrine were otherwise applicable, where a substantial potential public health hazard has been shown to exist, the doctrine should not be applied to overturn the hearing examiner's decision.

The order of dismissal is affirmed.

DURHAM and COLEMAN, JJ., concur.

Review denied by Supreme Court April 5, 1985.