No. 84-507

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

---

MILBANK MUTUAL INSURANCE COMPANY,
a corporation,

Plaintiff and Respondent,

-vs-

MELVIN EAGLEMAN, JR.,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carol C. Johns, Montana Legal Services, Wolf Point,
Montana

For Respondent:

Cannon & Sheehy; Edmund F. Sheehy, Jr., Helena,
Montana

---

Submitted on Briefs: June 13, 1985

Decided: September 12, 1985

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The Roosevelt County District Court entered a default judgment in favor of Milbank Mutual Insurance Company (Milbank) on December 9, 1983. Appellant, Melvin Eagleman, Jr. (Eagleman), appeals. We reverse.

The issues are:

1. Was Eagleman's notice of appeal timely filed with this Court?

2. Did the District Court have subject matter jurisdiction?

Eagleman is an enrolled member of the Fort Peck Sioux and Assiniboine Tribes and resides on the Fort Peck Reservation. Eagleman took a 1981 Ford Thunderbird without the permission of the owner, plaintiff's insured, Lawrence F. Blackdog. Eagleman damaged the vehicle within the exterior boundaries of the Fort Peck Reservation.

Milbank paid its insured $7,400 and brought a civil action against Eagleman in District Court seeking $7,400 in damages. Eagleman did not appear and a default judgment was entered.

In April 1983, the Department of Justice, Motor Vehicle Division, notified Eagleman that his driver's license was suspended for failure to satisfy the judgment. On September 11, 1984, Eagleman filed a motion to set aside the default judgment on the grounds that it was void under Rule 60(b)(4), M.R.Civ.P.

The motion was deemed denied by operation of law on September 21, 1984. On October 26, 1984, the District Court granted a motion for an extension of time for filing notice of appeal to this Court on a showing of excusable neglect. Eagleman filed notice of appeal on October 26, 1984.

2

I

Was Eagleman's notice of appeal timely filed with this Court?

On September 11, 1984, Eagleman filed a motion to set aside the default judgment. Rule 59(d), M.R.Civ.P. requires that a hearing on the motion be had within 10 days. Since no hearing was held within 10 days, Eagleman's motion was deemed denied on September 21, 1984.

Eagleman filed notice of appeal on October 26, 1984, thirty-five days after his motion was deemed denied. Milbank contends the notice of appeal was not timely filed.

Under Rule 5, M.R.App.Civ.P., the time to file a notice of appeal may be extended. In Zell v. Zell (1977), 172 Mont. 496, 499-500, 565 P.2d 311, 313, we discussed excusable neglect and the extension of time to file a notice of appeal.

> We believe that allowing a party to request such an extension of time before or after the expiration of the original time prescribed by Rule 5, M.R.App.Civ.P., is the better procedure and we adopt this view.
>
> This does not, however, give a party an unlimited amount of time to request an extension of time from the district court. Rule 5 provides:
>
> "Upon showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a period not to exceed 30 days from the expiration of the original time prescribed by this Rule." (Emphasis supplied.)

On October 26, 1984, Eagleman was granted an extension of time for filing a notice of appeal upon a showing of excusable neglect. The notice of appeal was filed within the 30-day extension of time authorized by Rule 5, M.R.App.Civ.P.

The appeal was timely filed.

## II

Did the District Court have subject matter jurisdiction?

There is no dispute that Eagleman is an enrolled member of the Fort Peck Sioux and Assiniboine Tribes and that the accident occurred within the exterior boundaries of the Fort Peck Reservation.

Subject matter jurisdiction over civil litigation in Montana between Indians and non-Indians arising out of conduct on an Indian reservation is governed by the three-part test of State ex rel. Iron Bear v. District Court (1973), 162 Mont. 335, 346, 512 P.2d 1292, 1299:

> Before a district court can assume jurisdiction in any matter submitted to it, it must find subject matter jurisdiction by determining: (1) whether the federal treaties and statutes applicable have preempted state jurisdiction; (2) whether the exercise of state jurisdiction would interfere with . . . [tribal] self-government; and (3) whether the Tribal Court is currently exercising jurisdiction or has exercised jurisdiction in such a manner as to preempt state jurisdiction.

The first and second elements of the test were adopted from Williams v. Lee (1959), 358 U.S. 217. The United States Supreme Court has interpreted these two elements to be disjunctive; if either is present, the state lacks subject matter jurisdiction.

> Congress has broad power to regulate tribal affairs under the Indian Commerce Clause, Art. 1, §8, cl. 3. This congressional authority and the "semi-independent position" of Indian tribes have given rise to two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members. First, the exercise of such authority may be pre-empted by federal law. Second, it may unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 220 (1959). The two barriers are independent because either, standing alone, can be a sufficient basis for holding state law inapplicable to activity

4

undertaken on the reservation or by tribal members.

White Mountain Apache Tribe v. Bracker (1980), 448 U.S. 136, 142-43 (citations omitted).

Has state jurisdiction been preempted by federal treaties or relevant statutes? The 1851 Treaty of Fort Laramie reserved land for the Sioux and Assiniboine Tribes. Land reserved by tribes through treaties, agreements ratified by Congress, or executive orders was originally beyond the reach of state governmental authority. However, subsequent federal law permitted states to assume jurisdiction, with the tribe's consent, over civil causes of action arising within Indian country. Montana has not obtained civil jurisdiction over the Fort Peck Sioux and Assiniboine Tribes under either Public Law 280 or the Civil Rights Act of 1968. See 28 U.S.C. § 1360(a); 25 U.S.C. § 1322(a). As we stated in Iron Bear:

> In Montana, the state assumed jurisdiction after Public Law 280 on only one reservation, [the] Flathead [Reservation]. It has not acted concerning the other six Montana reservations . . .

Iron Bear, 162 Mont. at 342, 512 P.2d at 1297.

Because Montana has not obtained jurisdiction under the above laws and the Tribes have decided to exercise jurisdiction in this area, it may be argued that federal preemption is in effect. Because recent federal cases are not clear, we choose not to rule on the preemption issue.

Would the exercise of state jurisdiction interfere with tribal self-government? The Ninth Circuit Court of Appeals, which uses a similar test, recently analyzed infringement of tribal sovereignty and stated:

> A tribe's interest in self-government could be implicated in one of two ways. First, if a state or federal court resolves a dispute which was within the province of the tribal courts or of other

5

nonjudicial law-applying tribal institu-
tions, that court would impinge upon the
tribe's right to adjudicate controversies
arising within it. Second, if the dis-
pute itself calls into question the
validity or propriety of an act fairly
attributable to the tribe as a govern-
mental body, tribal self-government is
drawn directly into the controversy.

We have recognized that the tribal court
is generally the exclusive forum for the
adjudication of disputes affecting the
interests of both Indians and non-Indians
which arise on the reservation . . .

. . .

We emphasize that the Indians in the Fort
Belknap community are, and always have
been, entitled to assume exclusive juris-
diction over civil controversies within
the reservation. However, if the dispute
itself does not implicate the tribal
government and the tribe has decided not
to exercise its exclusive jurisdiction,
it does not follow that the state courts
are without power to resolve a contro-
versy occurring within the state but on a
reservation . . .

R.J. Williams Co. v. Fort Belknap Housing Auth. (9th Cir.

1983), 719 F.2d 979, 983-84, cert. denied, ____ U.S. ____,

105 S.Ct. 3476 (1985) (citations omitted).

Subchapter 1, § 107 of the Fort Peck Tribes Comprehen-

sive Code Of Justice (1983) defines the extent of the Tribal

Court's jurisdiction as follows:

The [Tribal] Court shall have jurisdic-
tion over any action where one party to
the action shall be an Indian, . . . and

(a) the cause of action arises under the
Constitution or laws of the Tribes; or

(b) an Indian party to the action re-
sides on the Fort Peck Reservation.

Likewise, the 1965 Tribal Code stated that the Tribal Court

had jurisdiction over all civil actions "where the plaintiff

is not a member of the Tribes and the defendant is an Indi-

an." Chap. I, § 2(b), Fort Peck Tribal Code (1965).

6

The dispute between Milbank and Eagleman, an enrolled member of the tribes, is a civil controversy arising within the exterior boundaries of the reservation. The Fort Peck Sioux and Assiniboine Tribes are entitled to and have assumed exclusive jurisdiction. Under the facts of this case, it would be an infringement of tribal self-government to allow a non-Indian to sue a tribal member in a forum other than one the Fort Peck Sioux and Assiniboine Tribes have established for themselves.

The Fort Peck Code further establishes that the Tribal Court is currently authorized to exercise jurisdiction over this type of a case. This meets the third test of Iron Bear.

We hold that the District Court's exercise of jurisdiction interferes with tribal sovereignty and the right to self-government of the Fort Peck Sioux and Assiniboine Tribes.

We reverse the judgment of the District Court for lack of subject matter jurisdiction and direct the court to vacate its judgment against the defendant.

Justice

We concur:

Chief Justice

Justices

7