[No. 14382-1-III.    Division Three.    October 10, 1996.]

LARRY MAXA, ET AL., *Petitioners*, v. YAKIMA PETROLEUM, INC., ET AL., *Respondents*.

764

*Robert E. Lawrence-Berrey, Jr.,* and *Peters & Fowler, Inc., P.S.,* for petitioners.

*Robert W. Bjur* and *Bjur & Woodard,* for respondents.

SCHULTHEIS, J. — Larry Maxa, a non-Indian, entered into employment agreements and promissory notes with Yakama Indian Nation corporation Yakima Petroleum, Inc. (Petroleum). Each of these contracts was negotiated outside the Yakama reservation. We are asked whether the Yakima County District Court erred in deferring to the Yakama Nation Tribal Court the initial jurisdictional disposition of Mr. Maxa's suit on these contracts. We reverse and remand.

In early 1992, Mr. Maxa met with Robert Ramsey, Yakama tribe member and owner of Petroleum, to discuss the creation of a fuel delivery company. Meeting in Boise, Idaho, the two discussed a means to avoid taxes whereby Mr. Maxa would pick up petroleum products outside Washington and deliver them to Indian owned businesses on the reservation. Mr. Ramsey owned Eagle Stop and Save (Eagle), a convenience store and gas station on the reservation, and was authorized by a Yakama Tribal Council resolution to sell tax-exempt fuel to tribe members. Mr. Maxa agreed to lease a fuel tank trailer and to deliver the fuel under the business name Yakima Petroleum, Inc. Mr. Ramsey agreed to reimburse the start-up costs.

Mr. Maxa and Mr. Ramsey found a suitable tank trailer in Portland, Oregon, leased it and reached an employment agreement there. Since Petroleum could not raise the start-up funds, Mr. Maxa paid the necessary expenses and accepted two promissory notes from the company to cover.

The notes were executed in Mr. Ramsey's off-reservation business office at Chinook Tower in Yakima, where he ran Executive Business Consulting, a company that advised various reservations on business operations. He kept Petroleum's business records at the same site. Although some business cards, forms and letterhead gave the Eagle address for Petroleum, others gave the Yakima address. Chinook Tower also displayed a sign advertising Petroleum.

Mr. Maxa worked under the terms of his first employment agreement from October 1992 until January 1993, when a second agreement went into effect. During his employment, he kept the tank trailer parked at Eagle, on the reservation, when he was not traveling; he lived off reservation and kept his business records at home. Most of his working time was spent off reservation, picking up petroleum products out of state and driving them to the reservation. He was not responsible for billing or payments, which were handled at the Yakima address.

At some point, Mr. Maxa quit Petroleum and filed suit in the Yakima County District Court to recover on a total of five contracts, including the notes and employment agreements. In June 1994, the district court deferred the matter to the Yakama Nation Tribal Court to determine whether the tribal court had jurisdiction over the parties and subject matter of the action. Mr. Maxa's motion for reconsideration was denied and the superior court affirmed on appeal. This court accepted discretionary review. RAP 2.3(d)(3).

The issue is whether the trial court erred in referring this action to the tribal court. In referring the jurisdictional issue first to the tribal court, the trial court did not decline jurisdiction, but felt it was bound by federal case law to require exhaustion of remedies in the tribal court system. We disagree.

First, the district court's reliance on *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S. Ct. 2447, 85 L. Ed. 2d 818 (1985) and *Iowa Mut.*

*Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S. Ct. 971, 94 L. Ed. 2d 10 (1987) is misplaced. Both cases involve federal jurisdiction issues. Applying principles of comity, both mandate that federal courts abstain or dismiss when tribal courts assert civil jurisdiction. *Iowa Mut.*, 480 U.S. at 15; *National Farmers Union*, 471 U.S. at 857. State civil adjudicatory authority over litigation involving tribe members, on the other hand, is not specifically preempted by federal law. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 208, 107 S. Ct. 1083, 94 L. Ed. 2d 244 (1987). *See also Thomsen v. King County*, 39 Wn. App. 505, 512, 694 P.2d 40 (state civil jurisdiction over non-Indians on reservation land), *review denied*, 103 Wn.2d 1030 (1985).

Second, the facts here do not support a finding that the cause of action arose on the reservation or that it affects reservation affairs.

■ Both state jurisdiction over Indians and tribal jurisdiction over nonmembers are limited. Pursuant to the authority granted by the act of August 15, 1953 (Pub. L. 280, 83rd Cong., 1st Sess.), the Washington Legislature adopted RCW 37.12, which provides state civil and criminal jurisdiction over Indians on reservations only in certain circumstances[1] or when a tribe has requested subjection to full state jurisdiction. RCW 37.12.010, .021. The Yakama Indian Nation has never requested state assumption of jurisdiction. *State v. Sohappy*, 110 Wn.2d 907, 909, 757 P.2d 509 (1988). Tribal court jurisdiction over nonmembers *on* reservations is limited to (1) consensual relationships with tribe members, such as in contracts, or (2) nonmember conduct that threatens or affects the "political integrity, the economic security, or the health or welfare of the tribe." *Montana v.*

---

[1] The state assumes civil and criminal jurisdiction over Indians on Indian lands only in these areas: compulsory school attendance, public assistance, domestic relations, adoption, dependent children, mental illness, juvenile delinquency and operation of motor vehicles on public roads. RCW 37.12.010; *McCrea v. Denison*, 76 Wn. App. 395, 398 n.3, 885 P.2d 856 (1994). None of these statutory exceptions are applicable here.

*United States*, 450 U.S. 544, 566, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981). An individual tribe member who is *off* Indian land is subject to the laws of the State of Washington to the same extent as a nonmember. *Powell v. Farris*, 94 Wn.2d 782, 785, 620 P.2d 525 (1980).

■ Jurisdictional determinations are generally reviewed de novo. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992) (when underlying facts are undisputed, the trial court's assertion of personal jurisdiction is reviewed de novo); *Joy v. Kaiser Aluminum & Chem. Corp.*, 62 Wn. App. 909, 911, 816 P.2d 90 (1991) (subject matter jurisdiction).

Here, the relevant, largely undisputed, facts are as follows: Petroleum is a Yakama Nation licensed corporation, not registered in Washington, owned by a tribe member who is selling tax-exempt fuel by authorization of the tribal council. On some records, Petroleum's address is on the reservation (Eagle), while on other records, its address is off reservation (Chinook Tower in Yakima). The contracts and promissory notes were negotiated and executed off reservation. Although Mr. Maxa kept the fuel truck parked on the reservation between deliveries, he spent most of his working time off reservation and kept his business records off reservation. Petroleum's paperwork and bill handling took place off reservation. All deliveries were made on reservation and were made solely to benefit tribe members.

If the dispute involving the contracts arose on the reservation, deferral of the case to the tribal court would be appropriate. *Thomsen*, 39 Wn. App. at 513 (Indian tribes retain inherent sovereign power to exercise civil jurisdiction over non-Indian consensual commercial relations on their reservations). In such a case, the consensual nature of the relationship between the tribe member and nonmember, coupled with the situs of the dispute, would place subject matter jurisdiction in the tribal court. *Montana*, 450 U.S. at 565-66. *See also Milbank Mut. Ins. Co. v. Eagleman*, 218 Mont. 58, 705 P.2d 1117 (1985) (Montana

state courts lack subject matter jurisdiction over disputes between Indians and non-Indians arising out of on-reservation conduct).

Mr. Maxa's complaint, however, centers on breaching conduct that occurred off reservation, in Petroleum's failure to pay employee benefits, the promissory notes and another contractual obligation. The contracts themselves were executed off reservation. If it were decided, in light of these facts, that the action arose off reservation, the state court would have exclusive subject matter jurisdiction. *Powell*, 94 Wn.2d at 785.

██ When, as here, a dispute does not clearly arise either on or off a reservation, the essential question is whether state assumption of jurisdiction would interfere with reservation self-government. *Williams v. Lee*, 358 U.S. 217, 220, 79 S. Ct. 269, 3 L. Ed. 2d 251 (1959), *cited in Powell*, 94 Wn.2d at 786. The State has an interest in protecting parties to contracts from arbitrariness in enforcement. *Aircraft Equip. Co. v. Kiowa Tribe*, 921 P.2d 359, 362 (Okla. 1996). As noted by the Oklahoma Supreme Court in *Aircraft*, the benefits of state enforcement of contracts between Indians and non-Indians apply to both tribal members and nonmembers:

> Contracts are effective when parties know that the provisions of the contract will be enforced in our district courts. Such a policy protects all of our citizens including the tribes who voluntarily choose to do business with their fellow Oklahoma citizens. If it were otherwise, the tribes would have difficulty finding anyone willing to risk his funds in unenforceable obligations. Such a rule would chill tribal commercial and entrepreneurial business.

*Aircraft*, 921 P.2d at 362. As with this case, the contracts in *Aircraft* and the Washington case of *Powell* were executed off reservation. The *Powell* court noted that enforcement of such a contract in state court would have little effect on the tribe's authority to regulate the business. *Powell*, 94 Wn.2d at 787. Considering the State's interest

in interpreting and enforcing contracts made with its citizens, and the negligible threat to tribal self-government, we find that the district court here had jurisdiction over the parties and the subject matter.

██ ██ Both parties request attorney fees on appeal, provided they prevail at trial. Mr. Maxa contends he is entitled to fees and costs pursuant to RCW 4.84.330 for provisions in the promissory notes and pursuant to RCW 49.48.030 for the unpaid wages claims. Petroleum fails to cite authority for its request. The trial court has discretion to award contractual and statutory attorney fees to the prevailing party both at the trial level and in the Court of Appeals. *Schumacher Painting Co. v. First Union Management, Inc.*, 69 Wn. App. 693, 702, 850 P.2d 1361, *review denied*, 122 Wn.2d 1013 (1993). We remand to the trial court the issue of attorney fees incurred in this appeal.

Reversed and remanded to district court.

SWEENEY, C.J., and MUNSON, J., concur.

Review denied at 131 Wn.2d 1016 (1997).